Robert Gibbs
Robert Pauw
Gibbs Houston Pauw
1000 Second Ave., Suite 1600
Seattle, WA  98104
Telephone: (206) 682-1080
Facsimile: (206) 689-2270
rgibbs@ghp-law.net

Gregory S. Siskind
Siskind Susser, PC
1028 Oakhaven Road
Memphis, TN 38119
Telephone: (901) 682-6455
Facsimile: (901) 339-9604
GSiskind@visalaw.com

R. Andrew Free
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 244-4345
Andrew@ImmigrantCivilRights.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Chintan MEHTA, Soury HAZRA, Venkata SHIVA AYYAGARI, QI Wang, QUAN Yuan, Ranjit JAIN, Satyavan PANDA, Ravi GUSAIN, Akshay KAWALAE, Subnash MAKKENA, HAIFENG Xiao, Aparna MITHAL, Vanshaj BINDAL, Ravi VISHNUVARDHAN, and Venkata SURAPANENI, on behalf of themselves and a class of all individuals similarly situated, <br><br> *Plaintiffs,* <br><br> v. | Case No.: 15-1543 <br><br> Class Action Complaint for Declaratory and Injunctive Relief |

CLASS ACTION COMPLAINT – 1

U.S. DEPARTMENT OF STATE, John )
F. KERRY, in his Official Capacity as )
Secretary of State, U.S. )
DEPARTMENT OF HOMELAND )
SECURITY, Jeh C. JOHNSON, in his )
Official Capacity as Secretary of )
Homeland Security, U.S. )
CITIZENSHIP AND IMMIGRATION )
SERVICES, León RODRIGUEZ, in his )
Official Capacity as Director, U.S. )
Citizenship and Immigration Services, )
)
  *Defendants.* )

---

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

CLASS ACTION COMPLAINT – 2

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

## Preliminary Statement

1. This case is about what happens when thousands of law-abiding, highly skilled immigrants spend millions of dollars preparing to apply for green cards in reasonable reliance on an agency's binding policy statement, only to find out at the last minute that a hapless federal bureaucracy has abruptly, inexplicably, and arbitrarily reneged on its promise.

2. Plaintiffs and the thousands of class members they seek to represent are the beneficiaries of approved employment-based visa petitions for highly skilled workers.

3. On September 9, 2015, the U.S. State Department ("DOS" or "State") published its monthly Visa Bulletin. It contained a significant and long awaited modernization called for by the White House and the Secretary of Homeland Security after a thorough review of shortcomings in the government's immigrant visa issuance process that currently allow tens of thousands of visas to go unused each year at the same time that hundreds of thousands of applicants wait in visa backlogs that stretch into the last decade.

4. Specifically, the October 2015 Visa Bulletin brings U.S. Citizenship and Immigration Services ("USCIS") into the 21st century, and in line with the longstanding DOS practice, by adding a date on which applicants may submit adjustment of status applications ("adjustment applications") that comes before the projected date on which final adjudicative action will occur. By adding this additional date for filing adjustment applications, DOS is better able to discharge

CLASS ACTION COMPLAINT – 3

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA 98104**
**(206) 682-1080**

its statutory duty of assessing visa demand and ensuring all of the visas Congress allots in a given fiscal year are used.

5.   In reasonable reliance on the October 2015 Visa Bulletin, Plaintiffs and thousands of others began assembling their adjustment applications. They went to USCIS-approved civil surgeons to obtain medical exams, vaccinations, and certificates, arranged for provision and translation of documents from their home countries, paid attorneys, took time off work, and cancelled upcoming travel plans. Plaintiffs and class members took all these actions based on their reasonable expectation—created by over five decades of uniform practice—that the government would abide by the Visa Bulletin it published on September 9, 2015.

6.   On September 25, 2015—less than 4 full business days before USCIS was to begin accepting adjustment applications under the October 2015 Visa Bulletin—Defendants broke their promise. State abruptly revised the Visa Bulletin, significantly altering several of the filing dates, and leaving Plaintiffs and potentially thousands of others without recourse.

7.   As a result, Plaintiffs and class members are now suddenly unable to submit adjustment applications on October 1, 2015 as promised, and consequently, they are unfairly locked out of the significant statutory and regulatory benefits afforded to people with pending adjustment applications.

8.   Because State's attempted revision constitutes arbitrary and capricious agency action contrary to law, as well as an abuse of the agency's discretion, and violates Plaintiffs' due-process rights, the Administrative Procedure Act ("APA")

CLASS ACTION COMPLAINT – 4

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

requires that the revised Visa Bulletin (the "Revised Visa Bulletin") be struck down and that USCIS be compelled to accept adjustment applications pursuant to the original October Visa Bulletin.

9.  In the absence of such relief, Plaintiffs and class members, who have spent thousands of hours and millions of dollars preparing adjustment applications in reasonable reliance on the binding agency policy statements DOS published, will be irreparably harmed and left without any remedy for Defendants' unlawful actions.

10. Accordingly, Plaintiffs seek declaratory and injunctive relief preventing Defendants from enforcing the unlawfully issued Revised Visa Bulletin.

## **Jurisdiction and Venue**

11. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (Administrative Procedure Act), and 28 U.S.C. § 1651 (All Writs Act). The United States waived its sovereign immunity over the claims raised here pursuant to 5 U.S.C. § 702. Jurisdiction lies to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). This action challenges Defendants' agency actions, procedural policies, practices, and interpretations of law. This action does not challenge a final removal order or a discretionary decision involving the grant or denial of an adjustment application. Therefore, the jurisdiction-stripping provisions of 8 U.S.C. § 1252 are not applicable.

CLASS ACTION COMPLAINT – 5

12. No administrative remedy exists to redress the grievances set forth herein. Accordingly, no exhaustion was required, and this Court has the jurisdiction to hear Plaintiffs' claims.

13. This District is the proper venue pursuant to 28 U.S.C. § 1391(e)(1)(A) because DOS, DHS, and USCIS reside and operate within this District, and pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim will occur within this District.

<u>Parties</u>

14. Plaintiff Chintan **Mehta** is a citizen of India who currently resides in Bothell, Washington. Plaintiff Mehta is an IT professional for a large U.S. technology corporation. Plaintiff Mehta earned his M.S. in Electrical and Electronics Engineering from the University of Bridgeport. Plaintiff Mehta is the beneficiary of an EB-2 visa petition with a priority date of September 2010. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Mehta Spent $1,850.00 on attorney's fees, $500.00 on medical examinations and $50.00 on postage fees. Additionally, Plaintiff Mehta was forced to reject a job offer that would have resulted in a $25,000 annual raise. Additionally, Plaintiff Mehta has not been able to travel for the past four years causing him to miss both his brother's and his sister's weddings. Plaintiff Mehta will serve as Lead Class Representative in this action.

15. Plaintiff **Sourav Hazra** is a citizen of India who currently resides in Las Vegas, Nevada. Plaintiff Hazra has over 13 years of experience in the IT industry

CLASS ACTION COMPLAINT – 6

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

and is a Senior Manager at an international software company. Plaintiff Hazra is the beneficiary of an EB-2 visa petition with a priority date of May 9, 2011. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Hazra spent $1,200.00 on attorney's fees, $420.00 on medical examinations, $1,000.00 on vaccinations, $200.00 on document retrieval from India, and took off of work for one day resulting in $500.00 in lost wages. Plaintiff Hazra and his wife were planning on trying to conceive their second child, but now they must wait at least three months at the advice of their USCIS-approved civil surgeon due to the negative impacts that the required MMR vaccine can have on fetal development. In addition, Plaintiff Hazra and his wife had to cancel a trip to India, instead sending their 20-month old child with a grandparent and without her parents.

16. Plaintiff **Venkata Shiva Ayyagari** is a citizen of India who currently resides in Placentia, CA. Plaintiff Shiva Ayyagari is an IT Consultant at a nationally recognized investment advisory firm. Plaintiff Shiva Ayyagari is the beneficiary of an EB-2 visa petition with a priority date of September 2010. Relying on the October Visa Bulletin, Plaintiff Shiva Ayyagari spent $2,000 on medical examinations, $1,500 on attorney's fees, $500 on document retrieval from India, and missed work resulting in $700 in lost hourly wages.

17. Plaintiff **Qi Wang** is a citizen of China who currently resides in Superior, Colorado. Plaintiff Qi works in the renewable energy industry and is a research engineer at National Renewable Energy Laboratory (NREL). NREL is the United States' primary laboratory for renewable energy and energy efficiency research and

CLASS ACTION COMPLAINT – 7

development. Plaintiff Qi earned his Ph.D. in Solid-State Physics from Syracuse University and has been published in peer reviewed journals. Plaintiff Qi is the beneficiary of an EB-2 visa petition with a priority date of February 2014. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff QI spent $400.00 on medical examinations, $1,400.00 on attorney's fees, $201.00 on document translation, and $200.00 on document retrieval from China.

18. Plaintiff **Quan Yuan** is a citizen of China who currently resides in Eau Claire, Wisconsin. Plaintiff Quan is a Mathematics Professor at University of Wisconsin-Stout. Plaintiff Quan has earned an M.S. in Statistics and a Ph.D. in Applied Mathematics and has published numerous peer reviewed articles on those subjects. Plaintiff Quan is the beneficiary of an EB-2 visa petition with a priority date of April 8, 2014. Relying on State's October 2015 Visa Bulletin, Plaintiff Quan spent $100 to retrieve documents from China and spent $5,000 on his adjustment application.

19. Plaintiff **Ranjit Jain** is a citizen of India who currently resides in Troy, Michigan. Plaintiff Jain is a Medical Doctor who specializes in diagnostic radiology. Plaintiff Jain is the beneficiary of an EB-2 visa petition with a priority date of August 26, 2010. Relying on the October 2015 Visa Bulletin, Plaintiff Jain spent $4,500.00 on attorney's fees, $495.00 on medical examinations, and $72.00 on passport photos, in addition to taking time off of work and suffering mental anguish and stress.

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

20. Plaintiff **Satyavan Panda** is a citizen of India who currently resides in Apopka, Florida. Plaintiff Panda works in the IT industry and is a project manager at a global technology company specializing in payment technology and services solutions. Plaintiff Panda is the beneficiary of an EB-2 visa petition with a priority date of December 2010. Relying on State's October 2015 Visa Bulletin, Plaintiff Panda spent $950.00 on medical examinations, $2,000.00 on attorney's fees, $200.00 on document retrieval from India, $100.00 on courier and postage and lost wages in the amount of $1,500.00 for taking time off work.

21. Plaintiff **Ravi Gusain** is a citizen of India who currently resides in Norwalk, CA. Plaintiff Gusain works in the IT industry and is a Technical Lead at a global technology company specializing in electronic payment and service solutions. Plaintiff Gusain is the beneficiary of an EB-2 visa petition with a priority date of March 2010. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Gusain spent $530.00 on medical examinations, $2,100.00 on attorney's fees, and $500.00 on document retrieval. Plaintiff Gusain also passed up a lucrative job offer in the hopes of receiving Employment Authorization Documents and Advanced Parole through Adjustment of Status.

22. Plaintiff Akshay **Kawale** is a citizen of India who currently resides in Sunnyvale, California. Plaintiff Kawale works for a technology company in Silicon Valley that specializes in data storage and management solutions. Plaintiff Kawale earned a M.S. in Information Networking from Carnegie Mellon University and a B.Eng. in Computer Engineering from the University of Mumbai. Plaintiff Kawale

CLASS ACTION COMPLAINT – 9

is the beneficiary of an EB-2 visa petition with a priority date of June 21, 2011. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Kawale took time off of work to prepare his immigration petition, resulting in $350.00 in lost wages.

23. Plaintiff Subhash **Makkena** is a citizen of India who currently resides in Chicago, Illinois. Plaintiff Makkena is employed as a Senior Software Engineer for SIEMENS PLM Solutions, a global technology company specializing automotive industry software. Plaintiff Makkena is the beneficiary of an EB-2 visa petition with a priority date of July 2010. Relying on the October 2015 Visa Bulletin, Plaintiff Makkena spent $800.00 on medical examinations, $1,900.00 on attorney's fees, $100.00 on document retrieval from India, and took time off work for doctor visits and document preparation, resulting in lost wages. Plaintiff Makenna plans to launch a start-up business that will create jobs in the U.S., but he is currently not able to work for any other employers or for himself.

24. Plaintiff Haifeng Xiao is a citizen of China who currently resides in Plymouth, Minnesota. Plaintiff Haifeng is a senior development engineer within the research and development department at an engineering company. Plaintiff Haifeng is the beneficiary of an EB-2 visa petition with a priority date of April 28, 2014. Relying on the October 2015 Visa Bulletin, Plaintiff Haifeng spent $450.00 on medical examinations (plus time off of work to attend the appointment), $9,850.00 on attorney's fees, $600.00 on document retrieval, and $75.00 on courier and postage. Plaintiff Haifeng's father is hospitalized in China with cancer, and she had

CLASS ACTION COMPLAINT – 10

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

counted on using the Advance Parole she would secure through the filing of the adjustment application to travel to China to spend time with him.

25. Plaintiff Aparna **Mithal** is a citizen of India who currently resides in New York, New York. Plaintiff Mithal is an accountant, currently working as a senior consultant at Protiviti. Plaintiff Mithal is the beneficiary of an EB-2 visa petition with a priority date in June 2011. Relying on the October 2015 Visa Bulletin, Plaintiff Mithal's employer incurred the costs associated with hiring an attorney to prepare his Adjustment of Status.

26. Plaintiff Vanshaj Bindal is a citizen of India who currently resides in West Windsor, New Jersey. Plaintiff Bindal is a lead designer focusing on user experience at a major financial institution. Plaintiff **Bindal** is the beneficiary of an EB-2 visa petition with a priority date of June 17, 2011. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Bindal spent $600.00 on medical examinations (plus time off of work to attend the appointment), $3,000.00 on attorney's fees, and $200.00 on document retrieval.

27. Plaintiff Ravi **Vishnuvardhan** is a citizen of India who currently resides in Tucson, Arizona. Plaintiff Vishnuvardhan is an aerospace design engineer, specializing in flight tests and electrical design. Plaintiff Vishnuvardhan is the beneficiary of an EB-2 visa petition with a priority date in May 2011. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Vishnuvardhan spent $550.00 on medical examinations (plus time off work to attend the appointment, which cost him an additional $750.00), $1,700.00 on attorney's fees, $275.00 on

CLASS ACTION COMPLAINT – 11

passport photographs and other miscellaneous expenses related to the adjustment application paperwork, and $2,750.00 on tickets for a flight he had to skip in order to remain in the country for the filing of his application. On top of those costs, Plaintiff Vishnuvardhan's brother was forced to postpone his wedding.

28. Plaintiff Venkata **Surapaneni** is a citizen of India who currently resides in Herndon, Virginia. Plaintiff Surapaneni has worked for the last twelve years as a senior programmer analyst at one of the country's largest insurance companies. Plaintiff Surapaneni is the beneficiary of an EB-2 visa petition with a priority date of November 11, 2010. Relying on the State Department's October 2015 Visa Bulletin, Plaintiff Surapaneni spent $1,200.00 on medical examinations (plus time off of work to attend the appointment), and $120.00 on postal charges and passport photographs. His wife and child are H-4 dependents under his H-1B visa and are not currently authorized to accept employment, which renders these out of pocket expenses a significant burden.

29. Defendant **DOS** is an executive agency of the United States with responsibility for oversight, management, and distribution of immigrant visas under the INA, as well as the monthly publication of the Visa Bulletin.

30. Defendant **John F. Kerry** is Secretary of State and has supervisory authority over the operations of the Department of State. Secretary Kerry is statutorily responsible for the administration of immigrant visas. He is sued in his official capacity.

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

31. Defendant **Department of Homeland Security** ("DHS") is an executive agency of the United States with responsibility for adjudicating adjustment of status applications, implementing visa modernization efforts directed by the President, and ensuring that accurate information on the demand for visas is provided to DOS.

32. Defendant **Jeh Johnson** is the Secretary of Homeland Security and has supervisory authority over the operations of DHS. Secretary Johnson is statutorily responsible for adjudicating adjustment applications. He is sued in his official capacity.

33. Defendant **USCIS** is an executive agency of the United States responsible for adjudicating applications for adjustment of status to lawful permanent residence and accurately reporting the demand for immigrant visas to DOS.

34. Defendant **León Rodriguez** is the Director of USCIS and as such is charged with responsibility for adjustment of status adjudications and provision of accurate immigrant visa demand information to DOS. He is sued in his individual capacity.

## Statutory, Regulatory, and Policy Framework

**A. Immigrant Visas**

35. Immigrant visas allow noncitizens to be admitted to the United States as Lawful Permanent Residents ("LPRs") (colloquially referred to as "green card holders") so that they may live, work, and travel internationally with far fewer restrictions than other U.S. non-immigrant visa holders. *See generally* 8 U.S.C. §§ 1101(a)(16), 1101(a)(20), 1255.

CLASS ACTION COMPLAINT – 13

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

36. Obtaining and maintaining an immigrant visa is also a significant step on the path toward United States citizenship and all the rights and privileges that accompany it. *See* 8 U.S.C. § 1427(a).

37. A noncitizen who wants to obtain an employment-based immigrant visa must be the beneficiary of an approved visa petition submitted to USCIS (such as an approved Form I-140 petition).

38. The Immigration and Nationality Act ("INA") defines employment-based immigrant visa classifications and sets forth numerical limitations (both worldwide and per country) on employment-based immigrant visas, including a formula for calculating those limitations. 8 U.S.C. § 1151, 1153(b), 1154(b).

39. A maximum of 140,000 employment-based immigrant visas are available each fiscal year under the INA. 8 U.S.C. § 1151(d).

40. Once USCIS approves a visa petition, those living in the United States under a current visa status may adjust their status to that of Lawful Permanent Residents but only if an Immigrant Visa is immediately available. 8 U.S.C. § 1255; 8 C.F.R. § 245.2(a)(2)(i)(A).

**B. The State Department's Visa Number Allocation System**

41. DOS is responsible for administering the provisions of the INA relating to numerical limitations on immigrant visa issuances, including managing the individual allotment of employment-based immigrant visas. 8 U.S.C. § 1153(g).

42. DOS allocates visa numbers for use in connection with the issuance of immigrant visas based on reports from consular officers and reports about

CLASS ACTION COMPLAINT – 14

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

applicantions for adjustment of status reported provided by officers of DHS. 22 C.F.R. § 42.51.

43. To monitor demand for immigrant visas and manage the visa queue, the DOS Visa Office (VO) operates a Numerical Control System ("NCS") to determine the numbers of visas available for each preference category and country during a given month.[1]

44. When demand for immigrant visa numbers outpaces the statutorily allotted supply in a particular preference category or country, DOS considers the category or country "oversubscribed" and imposes a cut-off date to keep the allocation of visas within the statutory limits for each fiscal year. Those who applied after the cut-off date go into a visa queue.

45. DOS divides applicantns in the visa queue by preference category and, if the applicant's native country has exceeded the INA's per-country cap, foreign state chargeability.

46. Once preference category and chargeability are accounted for, DOS determines an applicant's position in the visa queue by referring to his or her priority date, which is the date on which USCIS received the petition (I-130, I-140,

---

[1] For the State Department's detailed explanation of the INCS, *see* U.S. Department of State, The Operation of the Immigrant Numerical Control System, *available at* http://travel.state.gov/content/dam/visas/Immigrant%20Visa%20Control%20System_operation%20of.pdf (last visited Sept. 27, 2015).

CLASS ACTION COMPLAINT – 15

I-360, I-526 or, in some cases, foreign labor certification) to accord the applicant

immigrant status. 8 C.F.R. § 245.1(g)(2).

**C. The Visa Bulletin**

47. The State Department's Bureau of Consular Affairs reports the availability of

immigrant visas using a monthly Visa Bulletin, which is developed by the

Immigrant Visa Control and Reporting Division. 9 Foreign Affairs Manual App. E,

Ex. II, CA/VO Organization and Functional Responsibilities (West Aug. 31, 2011).

48. The Visa Bulletin indicates when statutorily limited visas are available to

prospective immigrants based on their individual priority date, preference category,

and chargeability country.

49. Thus, the purpose of the Visa Bulletin is to give applicants and federal

agencies timely and dependable notice of who will have an available immigrant visa

number beginning on the first day of the following month.

50. The Visa Bulletin allows applicants to check their place in the various family-

based and employment-based immigrant visa queues by providing the most recent

date when a visa number is available for each category.

51. An Immigrant Visa becomes available to a noncitizen applicant when his or

her priority date is earlier than the cut-off date shown in the Visa Bulletin for his or

her preference category and country of chargeability, or when the Visa Bulletin

shows the numbers for visa applicants in the non-citizen's preference category are

"current." 8 C.F.R. § 245.1(g)(1).

CLASS ACTION COMPLAINT – 16

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

## C. Adjustment of Status

52. Once an Immigrant Visa becomes available, the noncitizen may apply for Adjustment of Status. 8 U.S.C. § 1255(a)(3).

53. USCIS uses the Visa Bulletin to determine whether it will accept Form I-485, Application to Register Permanent Residence or Adjust Status for filing, and to determine when it can make a final adjudication on the application. A visa must be available both at the time the applicant files Form I-485 and at the time USCIS approves the application. 8 C.F.R. § 245.1(g). *See also* 8 C.F.R. § 245.2(C)(2).

54. Applicants who file for Adjustment of Status must: (a) pay a USCIS-approved civil surgeon to conduct a medical examination and submit the findings to the government; 8 C.F.R. § 245.5; (b) submit a number of forms depending on the basis for the underlying immigrant visa petition including Form I-485 Application to Register Permanent Residence or Adjust Status Form G-325A Biographic Information, Form G-28 Notice of Entry of Appearance as Attorney or Accredited Representative, Form I-131 Application for Travel Document and Form I-765 Application for Employment Authorization; 8 C.F.R § 245.2(a)(3); (c) submit receipt and approval notices for the underlying immigrant visa petition and foreign labor certification (if applicable) 8 C.F.R § 245.2(a)(3); (d) submit immigration photographs; (e) provide copies of marriage and divorce decrees with certified translation if the documents are not in English; (f) provide a copy of a full birth certificate with certified translation if the documents are not in English; (g) obtain and provide a copy of any court records, if applicable; a copy of the applicant's

CLASS ACTION COMPLAINT – 17

passport, visa stamp, Form I-94 and other immigration-related documents; (h) pay the applicable government filing fee.

55. Filing an application to adjust status carries a host of legal benefits. Upon applying for adjustment of status, noncitizens become eligible for fully portable employment authorization that is not dependent on the employer, as well as advance permission to travel abroad. 8 C.F.R. § 274a.12(c)(9); 8 U.S.C. § 1182(d)(5)(A). Applying for adjustment of status prevents the accrual of unlawful presence in the United States in the event the applicant's non-immigrant visa expires. 8 U.S.C. § 1182(a)(9)(B). Filing an adjustment application within a certain period is also a necessary step for noncitizens to protect the ability of their minor children to adjust status prior to 'aging out' pursuant to the Child Status Protection Act. 8 U.S.C. § 1153(h)(1). Foreign employees whose adjustment applications have been on file for more than 180 days without USCIS adjudication are eligible to change jobs in certain circumstances where they would otherwise be unable to do so. 8 U.S.C. § 1154(j).

**D. The Visa Bulletin's Regulatory Effect on Adjustment Applicants**

56. By providing timely and authoritative notice each month to individuals whose preference categories entitle them to apply for an immigrant visa on the first day of the following month, the Visa Bulletin creates and regulates two key windows of time affecting adjustment applicants.

57. The first window, which can be thought of as the Preparation Period, begins as soon as DOS publishes the Visa Bulletin and ends on the first calendar day of the

CLASS ACTION COMPLAINT – 18

next month—i.e., the month governed by the Visa Bulletin—when adjustment applications may be submitted.

58. The Visa Bulletin takes immediate legal and practical effect upon publication by shaping the conduct and expectations of regulated parties and agencies immediately, thus creating the Preparation Period.

59. Because the Visa Bulletin has **never** been permanently revised after issuance in a way that adversely affected applicants' ability to rely on it for guidance on when they can file their adjustment applicants, the practical effect of publishing the Visa Bulletin and triggering the Preparation Period is to immediately induce immigrant visa applicants, their attorneys, and government agencies to take affirmative preparatory steps in reliance on the Bulletin.

60. The second window of time, which can be thought of as the Application Period, begins on the first day of the month covered by the Visa Bulletin and continues until the last day of that month.

61. The Visa Bulletin binds adjustment applicants by structuring and ordering their conduct during both the Preparation Period and the Application Period.

## **Factual Background**

### A. The Administration's Immigrant Visa Modernization Efforts.

62. Year in and year out, DOS fails to issue thousands of immigrant visas authorized by Congress. Indeed, "[h]undreds of thousands of [immigrant] visas have gone unissued in the past despite heavy demand for them," according the Secretary

CLASS ACTION COMPLAINT – 19

of Homeland Security Jeh Johnson.[2] In the past five years alone, an average of 2%

of immigrant visas—representing tens of thousands of potential new green cards—

have gone unused due to systemic inefficiencies in the visa allotment system.[3]

63. On November 20, 2015, the President announced a sweeping set of executive

actions aimed at improving and modernizing America's broken immigration

system.[4]

64. One aspect of the President's announcement was a Presidential

Memorandum on Modernizing and Streamlining the U.S. Immigrant Visa System

for the 21st Century.[5]

---

[2] Memorandum from Jeh Johnson for León Rodriguez and Thomas Winkowski re: Policies Supporting U.S. High-Skilled Businesses and Workers, at 2 (Nov. 20, 2014) (hereinafter, "Johnson Memo"), *available at* http://www.dhs.gov/sites/default/files/publications/14_1120_memo_business_actions.pdf (last visited Sept. 27, 2015).

[3] The White House, Modernizing & Streamlining Our Legal Immigrant System for the 21st Century at 14 (July 2015) (hereinafter "White House Modernization Report"), *available at* https://www.whitehouse.gov/sites/default/files/docs/final_visa_modernization_report1.pdf (last visited Sept. 27, 2015).

[4] The White House, Fact Sheet: Immigration Accountability Executive Action (Nov. 20, 2014), *available able* https://www.whitehouse.gov/the-press-office/2014/11/20/fact-sheet-immigration-accountability-executive-action (last visited Sept. 28, 2015).

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

65. The President directed the Secretaries of State and Homeland Security to develop, within 120 days, recommendations "to ensure that administrative policies, practices, and systems use all of the immigrant visa numbers that Congress provides for and intends to be used, consistent with demand."[6]

66. Secretary Johnson, in turn, directed USCIS to "continue and enhance its work with the Department of State to ensure that all immigrant visas authorized by Congress are issued to eligible individuals," and also to "work with the Department of State to improve the system for determining when immigrant visas are available to applicants during the fiscal year." [7]

67. Secretary Johnson also noted, "Department of State has agreed to modify its visa bulletin system to more simply and reliably make such determinations, and I expect USCIS to revise its current regulations to reflect and complement these proposed modifications."[8]

---

[5] *See* https://www.whitehouse.gov/the-press-office/2014/11/21/presidential-memorandum-modernizing-and-streamlining-us-immigrant-visa-s (last visited Sept. 28 2015). *See also* 79 Fed. Reg. 70769 (Nov. 26, 2014).

[6] *Id.* at 70769-70.

[7] Johnson Memo at 2.

[8] *Id.*

CLASS ACTION COMPLAINT – 21

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

68. In July 2015, after extensive inter-agency coordination and consultation and a Request for Information published in the Federal Register which elicited approximately 1,650 responses, 79 Fed. Reg. 78458 (Dec. 30, 2014), the White House announced:

> Later this year, State, in consultation with DHS, will revise the monthly Visa Bulletin to better estimate immigrant visa availability for prospective applicants, providing needed predictability to nonimmigrant workers seeking permanent residency. The revisions will help ensure that the maximum number of available visas is issued every year, while also minimizing the potential for visa retrogression. **These changes will further allow more individuals seeking LPR status to work, change jobs, and accept promotions. By increasing efficiency in visa issuance, individuals and their families who are already on a path to becoming LPRs will have increased security that they can stay in the United States, set down roots, and more confidently seek out opportunities to build lives in our country.[9]**

**B. The October 2015 Visa Bulletin.**

69. Following through on the promise of this announcement by the White House, on September 9, 2015, DOS published the October 2015 Visa Bulletin, which included critical substantive improvements. Exhibit A.

70. In addition to providing charts reflecting the normal cut-off priority dates in each visa preference and chargeability category, which it now terms "Application Final Action Dates" ("FADs"), the modernized October 2015 Visa Bulletin included a second chart with a new set of dates, called "Dates for Filing Applications," ("filing dates") reflecting when adjustment applications may be filed.

---

[9] **White House Modernization Report at 29 (emphasis added).**

CLASS ACTION COMPLAINT – 22

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

71. State's addition of filing dates is precisely the modernization of the Visa Bulletin the White House touted. More efficient filing of adjustment applications allows "more individuals seeking LPR status to work, change jobs, and accept promotions[,] set down roots, and more confidently seek out opportunities to build lives in our country." And it allows more efficient usage of immigrant visa numbers to help prevent them going unused.

72. With respect to applications with USCIS, the October 2015 Visa Bulletin provides that the FADs should be used to determine when to file, "unless otherwise indicated in this bulletin":

United States Department of State
Bureau of Consular Affairs

## VISA BULLETIN

Number 85 Volume IX                                    Washington, D.C.

IMMIGRANT NUMBERS FOR OCTOBER 2015

A.   STATUTORY NUMBERS

This bulletin summarizes the availability of immigrant numbers during October for: "Application Final Action Dates" (consistent with prior Visa Bulletins) and "Dates for Filing Applications," indicating when immigrant visa applicants should be notified to assemble and submit required documentation to the National Visa Center.

Unless otherwise indicated in this bulletin, individuals seeking to file applications for adjustment of status with U.S. Citizenship and Immigration Services (USCIS) in the Department of Homeland Security must use the "Application Final Action Dates" charts below for determining when they can file such applications. This bulletin may indicate the ability for such individuals to instead use the "Dates for Filing Visa Applications" charts, when USCIS determines that there are more immigrant visas available for the fiscal year than there are known applicants for such visas. Applicants for adjustment of status may refer to USCIS for additional information by visiting www.uscis.gov/visabulletininfo.

73. Paragraph 5.B of the October 2015 Visa Bulletin addresses the filing dates for employment-based immigrant visas. Ex. A at 5. With respect to applications for adjustment of status (as opposed to immigrant visa applications submitted to the

CLASS ACTION COMPLAINT – 23

National Visa Center for consular processing abroad), the October 2015 Visa Bulletin indicates that USCIS **will** accept adjustment of status applications filed pursuant to the filing date, rather than the final action date:

USCIS has determined that this chart may be used (in lieu of the chart in paragraph 5.A.) this month for filing applications for adjustment of status with USCIS. Applicants for adjustment of status may visit www.uscis.gov/visabulletininfo for additional information.

| Employment-Based | All Chargeability Areas Except Those Listed | CHINA - mainland born | INDIA | MEXICO | PHILIPPINES |
|---|---|---|---|---|---|
| 1st | C | C | C | C | C |
| 2nd | C | 01MAY14 | 01JUL11 | C | C |
| 3rd | 01SEP15 | 01OCT13 | 01JUL05 | 01SEP15 | 01JAN15 |
| Other Workers | 01SEP15 | 01JAN07 | 01JUL05 | 01SEP15 | 01JAN15 |
| 4th | C | C | C | C | C |
| Certain Religious Workers | C | C | C | C | C |
| 5th Targeted Employment Areas/ Regional Centers and Pilot Programs | C | 01MAY15 | C | C | C |

## C. USCIS Unequivocally Adopts the October 2015 Visa Bulletin's Filing Dates.

74. On September 9, 2015—the same day the State Department released the October 2015 Visa Bulletin indicating USCIS would accept adjustment applications in accordance with the filing date chart—USCIS published the Dates for Filing Applications listed in the October 2015 Visa Bulletin on its website at the address listed in the Visa Bulletin. Exhibit B.

75. Specifically, in the "When to File" section of USCIS's page, the agency provides the filing date charts contained in Paragraph 5.B of the October 2015 Visa Bulletins. Ex. B.

CLASS ACTION COMPLAINT – 24

76. USCIS also created and posted to its website an Infographic describing a four-step process immigrant visa applicants should use to understand the adjustment of status process. Exhibit C. Under Step 4, USCIS instructs potential applicants to "Check the DOS Visa Bulletin", because "It will explain" which chart to use to determine when applicants can file for adjustment of status:

**4. Find out if you can file your I-485:  Check the DOS Visa Bulletin.**

It will explain whether you should use the **Application Final Action Dates chart** or **Dates for Filing Visa Applications chart** to determine when you can file.

**To use the charts:**

1. Find your visa type in the first column (on the left) of the appropriate chart (Family-sponsored, Employment-based, or Diversity Visa).

2. Stay in that row and move directly to the right to find the corresponding date under the country of your birth (as listed in the boldface columns across the top).

3. If the date on the chart is current ("C") or your priority date is earlier than the date on the chart, you may file your adjustment of status application, if otherwise eligible to do so.



U.S. Citizenship and Immigration Services

Visit the USCIS **"When to File Your Adjustment of Status"** page. USCIS will also post the correct chart on this page.

77. In addition, on September 9, 2015, the USCIS Public Affairs Office released an announcement captioned, "USCIS Announces Revised Procedures for Determining Visa Availability for Applicants Waiting to File for Adjustment of Status." Exhibit D.

78. In this announcement, USCIS notes the introduction of two charts into the Visa Bulletin, with one representing final action dates and the other representing filing dates. Ex. D.

79. Through this announcement, USCIS informed the public: "Each month, in coordination with DOS, USCIS will monitor visa numbers and post the relevant DOS Visa Bulletin chart. Applicants can use the charts to determine when to file

CLASS ACTION COMPLAINT – 25

**GIBBS HOUSTON PAUW**
1000 Second Ave., Suite 1600
Seattle, WA  98104
(206) 682-1080

their Form I-485, Application to Register Permanent Resident or Adjust Status."
Ex. D.

80. USCIS thus confirmed DOS's identification of who should act during the
Preparation Period to get their adjustment applicants ready.

**D. Thousands Prepare Adjustment of Status Applications in Response to the October 2015 Visa Bulletin.**

81. Taken in tandem, the July 2015 White House Report, the October 2015 Visa
Bulletin, the USCIS visa bulletin webpage, and the USCIS announcement all
indicated clearly and unequivocally that employment-based immigrant visa
applicants with priority dates reflected in the filing dates chart would be able to file
applications for adjustment of status beginning on October 1, 2015.

82. The October 2015 Visa Bulletin placed thousands of law-abiding immigrants
just 21 short days away from the long-awaited opportunity to change jobs, accept
promotions, travel abroad, and put down more lasting roots in the United States by
purchasing homes, starting businesses, and preserving family members' ability to
work and study long-term.

83. In reliance on the government's modernized Visa Bulletin, thousands of
highly skilled Chinese and Indian employment-based immigrant visa applicant
began the timely, costly, and disruptive process of gathering documentation,
obtaining medical certificates, and filling out applications.

84. For example, a highly skilled government contractor, who also happens to be
the mother of a newborn baby less than two weeks old rushed to get her application

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

prepared, including enduring a three-hour wait with her baby while a USCIS-approved Civil Surgeon reviewed their vaccinations.

85. A software developer and aspiring inventor and entrepreneur began pitching his idea for a start-up, contacting vendors, drawing out plans for execution, and beginning plans to launch his new venture on the day he received his employment authorization card. He spent thousands of dollars preparing the applications for himself and his wife.

86. Multiple pregnant mothers had to choose between an opportunity to adjust status or the health of their fetus upon being required by USCIS-approved civil surgeons to undergo an MMR vaccine in order to be medically cleared for adjustment.

87. Plaintiffs, through their counsel, are aware of no fewer than 1,000 individuals who, on behalf of themselves and their families, have spent, on average, $2056 to prepare their adjustment of status applications.

**F. DOS and USCIS Abruptly and Inexplicably Revise the Visa Bulletin.**

88. On September 25, 2015, less than four business days before thousands of immigrant visa applicants and their attorneys could begin sending adjustment applications to USCIS in reliance on the October 2015 Visa Bulletin, the Department of State abruptly issued a Revised Visa Bulletin. Exhibit E.

89. The Revised Visa Bulletin alters the filing dates for six categories of immigrants, including EB-2 applicants from both China and India. Ex. E at 6.

CLASS ACTION COMPLAINT – 27

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA 98104**
**(206) 682-1080**

90. The Revised Visa Bulletin thus significantly reduces the number of applicants who will be able to file adjustment applications on October 1, 2015. Specifically, it lops off 17 months' worth of Chinese EB-2 applicants, including Plaintiffs Qi, Quan, and Haifeng, by eliminating individuals with priority dates between the original Bulletin's cut-off of May 1, 2014 and the revised cut-off of January 1, 2013.

91. Similarly, the Revised Visa Bulletin eliminates two years' wroth of Indian EB-2 applicants from eligibility to file by retrogressing the cut-off from July 1, 2011 to July 1, 2009.

92. As a result of these changes, the vast majority of individuals, potentially numbering in the tens of thousands, who would have been able to file adjustment applications under the original Visa Bulletin on October 1, 2015 are no longer able to do so under the Revised Visa Bulletin.

93. The Revised Visa Bulletin indicates that these changes occurred, "[f]ollowing consultations with the Department of Homeland Security (DHS)."

94. But DOS offers no additional or reasoned explanation for why those consultations altered the dates so dramatically, why the information DHS provided in those consultations was not provided prior to the issuance of the October 2015 Visa Bulletin, as required by 22 C.F.R. § 42.51, and why no more advance notice was possible.

95. In fact, the Revised Visa Bulletin provides applicants no reasoned explanation whatsoever for DOS's radical recalculation.

CLASS ACTION COMPLAINT – 28

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA 98104**
**(206) 682-1080**

96. The Revised Visa Bulletin does, however, assure the thousands of immigrant visa applicants who spent much of September preparing their adjustment applications that "DHS will rely on this revised bulletin, rather than the bulletin published on September 9, 2015, when considering whether an individual is eligible to file an application for adjustment of status."

**G. DOS's Only Previous Attempt at Visa Bulletin Revision Failed.**

97. In the decades-long history of the Visa Bulletin, DOS has only ever attempted to make a substantive revision that negatively affected the rights of applicants to submit applications on one other occasion.

98. That ill-fated attempt, undertaken in the summer of 2007, failed spectacularly.

99. After attempting to unlawfully revise the July 2007 Visa Bulletin (issued June 12, 2007) and threatening to reject thousands of applications based on that revision (issued July 2, 2007), the government withdrew the revised version and allowed all applicants who would have been eligible under the original bulletin to file adjustment applications.

100.     Recognizing the intense public outcry created by undermining the integrity and reliability of the Visa Bulletin through sudden, unannounced changes that negatively impacted the rights of applicants, then-Director of USCIS Emilio Gonzalez stated, "The public reaction to the July 2 announcement made it clear that the federal government's management of this process needs further review." Director Gonzalez assured the public he was "committed to working with Congress

CLASS ACTION COMPLAINT – 29

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

and the State Department to implement a more efficient system in line with public expectations."

101.     What was true in July 2, 2007 was no less true on September 25, 2015: the Department of State has **never** issued and then enforced a revision to the Visa Bulletin that so negatively affected adjustment of status applicants.

102.     As a result, the hundreds of thousands of applicants waiting in the visa queue, including thousands who, like Plaintiffs, scrambled and paid thousands of dollars so they could submit their adjustment of status applications on October 1, 2015, heretofore had no reason to doubt the Visa Bulletin's representation that an application may be submitted at the beginning of the next month.

103.     Whereas the President and the Secretary of Homeland Security promised a modernized immigrant visa system that would encourage highly skilled workers like Plaintiffs to invest, put down roots, and feel secure in their long-term ability to remain in the United States while their green card applications are pending, Defendants' actions have had precisely the opposite effect. Rather than encouraging economic development and civic participation through improvements to the Visa Bulletin, Defendants' actions threaten to permanently undermine the public's reliance on it, thus significantly diminishing the numbers of immigrant visas that will be used each year, and leading to increasing volatility in visa demand.

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

**Exhaustion of Administrative Remedies**

104.    No administrative remedy exists allowing any of the Plaintiffs to redress the harm Defendants have caused by abruptly abandoning the October 2015 Visa Bulletin and substituting it with the Revised Visa Bulletin.

**Class Action Allegations**

105.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b). Plaintiffs seek to represent a class of persons, provisionally defined as follows:

   a.  All foreign nationals within the EB-2 preference category who would have been eligible to file applications for adjustment of status with USCIS on October 1, 2015 under the October 2015 Visa Bulletin but who are no longer able to do so as a result of the issuance of the Revised Visa Bulletin. Specifically:

      i.  Indian Nationals in the EB-2 Category with Priority Dates between August 1, 2009 and July 1, 2011; and

      ii.  Chinese Nationals in the EB-2 Category with Priority Dates between February 1, 2013 and May 1, 2014.

106.    Plaintiffs satisfy all requests of Rule 23. The proposed class is so numerous and geographically diverse that joinder of all members is impracticable. The precise number of potential class members is no fewer than 1,000 individuals who have already been identified by Plaintiffs, through counsel, but is estimated, on information and belief to include many thousands of individuals.

CLASS ACTION COMPLAINT – 31

107.     The questions of law and fact at issue are common to the proposed class, including whether Defendants acted without lawful authority, and whether their actions violated the INA, APA, Due Process Clause, or other laws.

108.     Plaintiffs' claims are typical of the claims of the proposed class, insomuch as all of these individuals suffer the same deprivations of regulatory and statutory rights available to applicants for adjustment of status by being deprived of the opportunity to file on October 1, 2015, as originally guaranteed by the October 2015 Visa Bulletin.

109.     The named Plaintiffs will fairly and adequately protect the interests of the proposed class because they seek declaratory and injunctive relief on behalf of the class as a whole and have no interest antagonistic to other members of the class.

110.     The prosecution of separate suits by individual class members would create the risk of inconsistent and varying adjudications. Questions of law and fact common to class members predominate over any questions affecting only individual class members, and a class action is superior to all other available methods for the fair and efficient adjudication of the claims in this case.

111.     The named Plaintiffs are represented by competent counsel with extensive experience in immigration law and federal court litigation, including class actions. Plaintiffs' counsel are representing the Plaintiffs and the class *pro bono*, and are willing and able to protect the interests of the class.

CLASS ACTION COMPLAINT – 32

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

112.    Finally, Defendants have acted on grounds generally applicable to the class, therefore making appropriate final declaratory and injunctive relief with respect to the class as a whole.

### Claims for Relief
### Count I: Violation of the Administration Procedure Act:
### Arbitrary & Capricious Agency Action & Agency Action Contrary to Law
### 5 U.S.C. § 706(2)

113.    All previous paragraphs are incorporated as though fully set forth herein.

114.    The Visa Bulletin carries the force and effect of law by binding both USCIS and the Department of State to action based on its contents. During the Preparation and the Application Period, USCIS uses the Visa Bulletin to determine whether to accept *and* whether to approve an Adjustment of Status application by an Immigrant Visa Applicant. 8 C.F.R. § 245.1(g)(1); 8 C.F.R. § 245.2. *See also* 9 FAM 42.41 N10.3-3 (West Oct. 1, 1997).

115.    DOS's abrupt rescission of the October 2015 Visa Bulletin and replacement of that publication with the Revised October Visa Bulletin, and USCIS's consequent refusal to honor the application filing dates in the October 2015 Visa Bulletin, constitutes arbitrary and capricious agency action, an abuse of discretion, and failure to observe the procedure required by law.

116.    Defendants' actions in rescinding the October Visa Bulletin and publishing the Revised Visa Bulletin retroactively altered the legal rights of Plaintiffs and class members during the Preparation Period, and threaten to do the same during the Application period, in violation of law.

CLASS ACTION COMPLAINT – 33

117.    DOS and USCIS' abrupt and radical abrogation of their own publicly announced Visa Bulletin and policies governing it left applicants for adjustment of status with no adequate notice of the agency's changed position.

118.    USCIS' threatened actions in following the cut-off dates in the Revised Visa Bulletin, rather than those published in the October Visa Bulletin, are in excess of statutory authority and limitations because they allow USCIS to improperly substitute its decision-making regarding the demand for immigrant visas, for that of the State Department, in violation of 5 U.S.C. § 706(2)(C), or in the alternative, allow State to impermissible delegate its statutory responsibilities to USCIS.

119.    As a result, Plaintiffs and members of the class they seek to represent spent thousands of hours and millions of dollars which will they will never be able to get back preparing to file adjustment of status applications that USCIS now says it will reject.

120.    On information and belief, no material change in fact that would justify altering the filing dates in the October Visa Bulletin occurred between September 9, 2015 and September 25, 2015. Rather, all of the information that was available to DOS in making its calculations in the Revised Visa Bulletin was also available to the agency prior to issuing the October Visa Bulletin.

121.    Accordingly, Plaintiffs seek declaratory and injunctive relief that Defendants' actions in abruptly and inexplicably rescinding the October 2015 Visa Bulletin are arbitrary, capricious, contrary to law, and an abuse of discretion.

CLASS ACTION COMPLAINT – 34

### Count II: Violation of the Fifth Amendment's Due Process Clause

122.     All previous paragraphs are incorporated as though fully set forth herein.

123.     Plaintiffs have a clearly established liberty interest under the Fifth Amendment's Due Process Clause in receiving adequate notice of agency actions affecting their rights and obligations under federal immigration statutes and regulations so they may plan accordingly during the Preparation Period.

124.     Defendants' failure to afford Plaintiffs adequate notice of its agency actions, causing them to expend significant time and resources with the reasonable expectation that the agency would follow its decades-old, established practice of abiding by the Visa Bulletin violates Plaintiffs' clearly established constitutional due process right to adequate notice of substantial agency policy changes prior to the commencement of the Preparation Period.

125.     Defendants afforded Plaintiffs no process of law before or after depriving them of their constitutionally protected liberty interest.

126.     Plaintiffs are presently suffering immediate, ongoing, and irreparable harm as a result of Defendants' deprivation of their liberty interests without due process.

### **Request for Relief**

**WHEREFORE**, Plaintiffs request that judgment enter in their favor and against Defendants, and that:

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

A. the Court declare that Defendants' arbitrary revision of the October 2015 Visa Bulletin constitutes unlawful agency action in violation of the Administrative Procedure Act;

B. the Court declare Defendants' failure to afford Plaintiffs of timely, adequate notice of changes to the October  2015 Visa Bulletin violates their constitutionally protected liberty interest without due process of law;

C. the Court enter a temporary restraining order, then preliminary and permanent injunction enjoining Defendants from enforcing the Revised Visa Bulletin, and requiring USCIS to accept adjustment of status applications in accordance with the October 2015 Visa Bulletin;

D. the Court award Plaintiffs reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

E. the Court award all other relief to Plaintiffs that it deems just, equitable, and proper.

Dated:  September 28, 2015                    Respectfully submitted,

/s/ R. Andrew Free*
R. ANDREW FREE, TN BPR No. 30513
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 244-4345
Andrew@ImmigrantCivilRights.com

CLASS ACTION COMPLAINT – 36

**GIBBS HOUSTON PAUW**
**1000 Second Ave., Suite 1600**
**Seattle, WA  98104**
**(206) 682-1080**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Gregory H. Siskind*
**GREGORY H. SISKIND, TN BPR No.**
**14487**
Siskind Susser, PC
1028 Oakhaven Road
Memphis, TN 38119
Telephone: (901) 682-6455
Facsimile: (901) 339-9604
GSiskind@visalaw.com


  /s/  Robert Pauw
Robert H. Gibbs, WSBA 5932
Robert Pauw, WSBA 13613
Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104-1003
(206) 682-1080

*Applications for Admission Pro Hac Vice
forthcoming*

CLASS ACTION COMPLAINT – 37