1

2

3

4

5

6

7                                 UNITED STATES DISTRICT COURT
                          FOR THE WESTERN DISTRICT OF WASHINGTON
8                                          AT SEATTLE

9

10   CHINTAN MEHTA, et al.,                             No. C15-1543RSM

11                              Plaintiffs,

12        v.                                            ORDER DENYING MOTION FOR
                                                        TEMPORARY RESTRAINING ORDER
13
     UNITED STATES DEPARTMENT OF
14   STATE, et al.,

15                              Defendants.

16

17          THIS MATTER comes before the Court on Plaintiffs' Emergency Motion for

18   Temporary Restraining Order ("TRO").  Dkt. #7.  The Court has reviewed the briefing of the

19   parties.  Having considered the briefing and determined that a hearing is not necessary, the

20
     Court now DENIES Plaintiffs' Motion for the reasons set forth below.
21

22       **A.  Legal Standard**

23          In order to succeed on a motion for temporary restraining order, the moving party must

24   show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the

25
     moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor
26
27   of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res.*

28   *Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  The Ninth Circuit

     ORDER
     PAGE - 1

employs a "sliding scale" approach, according to which these elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

### B.  Background

Plaintiffs and potential class members are "the beneficiaries of approved employment-based visa petitions for highly skilled workers."  Dkt. #6 at 3.  On September 9, 2015, the U.S. State Department published a monthly "Visa Bulletin" with "a date on which applicants may submit adjustment of status applications… that comes before the projected date on which final adjudicative action will occur."  Dkt. #6 at 3.  Plaintiffs allege that they then spent significant time and money assembling adjustment applications "based on their reasonable expectation—created by over five decades of uniform practice—that the government would abide by the Visa Bulletin it published on September 9, 2015."  *Id.* at 4. On September 25, 2015, the State Department published another, revised Visa Bulletin withdrawing or changing the date on which applicants may submit adjustment of status applications.  *Id.*  Plaintiffs brought this lawsuit on September 28, 2015, and amended their Complaint on September 30, 2015.  Dkt. ##1; 6.

### C.  Likelihood of Success on the Merits

In their Motion for TRO, Plaintiffs argue that "Defendants' abrupt and unexplained change in visa bulletin policy constitutes arbitrary and capricious action in violation of the Administrative Procedure Act ("APA") and the Immigrant and National Act ("INA")." Dkt. #7 at 2.  Plaintiffs argue that the State Department's "rescission of the original [September 9] Visa Bulletin and replacement of it with a Revised Visa Bulletin, constitutes final agency action, and thus [it] is subject to the APA's judicial review provisions," citing to 4 U.S.C. § 704 and

ORDER
PAGE - 2

*Bennett v. Spear*, 520 U.S. 154, 178 (1997).  Dkt. # 7 at 4.  However, the cited law does not reference State Department Visa Bulletins specifically, but the standard for final agency action itself.  §704 states "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."  *Bennett* states, "[f]irst, the action must mark the consummation of the agency's decisionmaking process… it must not be of a merely tentative or interlocutory nature…. second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett* 520 U.S. at 178 (internal citation and quotation marks omitted).  *Bennett* involved a challenge to a biological opinion issued by the Fish and Wildlife Service in accordance with the Endangered Species Act of 1973, not a State Department Visa Bulletin.  *Id.* at 157.  Plaintiffs argue, without citation to law, that the September Visa Bulletins "represented the culmination of the Department of State[]'s decision-making process" and that that these bulletins "determined the rights of adjustment applicants, the obligations of [Citizenship and Immigration Services] to those applicants, and the legal consequences that flow from [the State Department's] calculation of filing dates."  Dkt. #7 at 4-5.  Plaintiff's only support for this argument is declarations of other immigration attorneys opining on the matter.  *See* Dkt. ## 7-2; 7-3; and 7-4.  Plaintiffs thus appear to be presenting the question of whether the State Department's Visa Bulletins constitute final agency action as an issue of first impression.  Although it is possible that Plaintiffs may be able to establish that these Visa Bulletins constituted final agency action, it is not clear to the Court that Plaintiffs have met the stringent standard for likelihood of success on the merits used on a TRO motion.

ORDER
PAGE - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs further argue that, as a final agency action, the revised Visa Bulletin "provided no contemporaneous justification… other than an ambiguous and puzzling reference to consultation with [the Department of Homeland Security]…" for a "departure from its practice of issue (sic) a single, definitive Visa Bulletin each month" and that this "substantially alter[ed] and diminish[ed] the rights of Plaintiffs and potential class members, constitut[ing] arbitrary and capricious agency action." Dkt. #7 at 5.  In their Response, Defendants attempt to clarify any ambiguity created by their Visa Bulletins by first pointing to what they believe was clear language in the September 25, 2015, Visa Bulletin: "Dates for Filing Applications for some categories… have been adjusted to better reflect a timeframe justifying immediate action in the application process." Dkt. #13 at 9 (quoting Dkt. #1-5 at 2).  Defendants expand on this language by arguing that the September 9, 2015, Visa Bulletin "did not accurately reflect visa availability as required for [Citizenship and Immigration Services] to accept adjustment of status applications," citing to 8 U.S.C. § 1255(a)(3). Dkt. #13 at 9.  Defendants argue that the initial Visa Bulletin erroneously implied that visas were immediately available to certain individuals, and that the Revised Visa Bulletin was necessary to prevent the State Department from exceeding its statutory authority. Dkt. #13 at 11.  From the limited briefing provided by the Parties, the Court finds that, even if the Visa Bulletins constituted final agency action, the Plaintiffs have failed to show a likelihood of success on their APA claim because the State Department's Revised Visa Bulletin included a plausible explanation for its action, and it appears that the Revised Visa Bulletin did not in fact substantially alter or diminish the rights of Plaintiffs and potential class members, rather it clarified an erroneous prior statement of their rights.

ORDER
PAGE - 4

Plaintiffs also argue that Defendants' failure to give Plaintiffs adequate notice violated the Due Process Clause of the Fifth Amendment. *Id.* at 2-3. Plaintiffs provide no legal citation to their assertion that a change in a State Department bulletin can trigger a violation of the Due Process Clause. *See* Dkt. #7 at 6.[1] In Response, Defendants question whether "Plaintiffs had any reasonable expectation that they would be able to file their adjustment applications in the foreseeable future" because the priority dates held by Plaintiffs are several years after the priority date issued on August 11, 2015. Dkt. #13 at 12. Defendants cite to *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) for the proposition that, in a due process claim, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Defendants also assert, without citation, that the "issuance of the Visa Bulletin prior to its effective date is a courtesy that is not required by statute." Dkt. #13 at 12. The Court simply cannot find Plaintiffs are likely to succeed on a due process claim when they cannot point to any law establishing that a Visa Bulletin can create a constitutional right to due process, and Defendants present evidence clearly calling into question the reasonableness of Plaintiffs relying on these Visa Bulletins to create "a legitimate claim of entitlement." Plaintiffs thus fail to demonstrate a likelihood of success on the merits at this time.

**D. Likelihood of Irreparable Harm**

Likewise, Plaintiffs fail to show irreparable harm under these circumstances. Plaintiffs' Motion first argues, without citation, that "allowing [Citizenship and Immigration Services] to enforce the Revised Visa Bulletin at the beginning of the Application Period on October 1,

---

[1] Instead, Plaintiffs cite to cases involving applications for a Special Agricultural Worker program and applications for asylum. Dkt. #7 at 6 (citing *Haitian Refugee Center v. Nelson*, 872 F.2d 1555, 1562 (11th Cir. 1989); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 553 (9th Cir. 1990)).

ORDER
PAGE - 5

2015 will deprive Plaintiffs of due process under the Fifth Amendment." Dkt. #7 at 7. This claim is addressed above. Plaintiffs cite to cases with inapplicable fact patterns for the premise that "a threatened deprivation of a Plaintiff's constitutional right presumptively demonstrates irreparable harm." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014)). Plaintiffs also argue, without citation to a declaration of an injured Plaintiff or other evidence, that this TRO is necessary to prevent economic losses including non-refundable monies paid to "civil surgeons for medical examinations" and for "certifications." Dkt. #7 at 8. Plaintiffs also argue, again without citation, that "at least one Plaintiff whose parent is currently suffering from cancer in China, will be unable to take advantage of the benefits conferred by accepting adjustment applications…" *Id.*

Defendants argue that "Plaintiffs must demonstrate with specificity an irreparable harm that is likely and immediate in the absence of an injunction," citing to *Winter*, *supra*, at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Dkt. #13 at 13. Defendants also highlight the necessity of the harm to be *irreparable*, citing to *Sampson v. Murray*, 415 U.S. 61, 90, (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date… weighs heavily against a claim of irreparable harm."). Dkt. #13 at 13. Defendants argue that the injuries listed by Plaintiffs in their Motion "are capable of redress at the conclusion of this case in the same manner as they would be if the TRO is granted" because if the Court grants the relief requested by Plaintiffs and reinstates the

ORDER
PAGE - 6

September 9, 2015, Visa Bulletin, "the actions Plaintiffs took in support of their applications would not be losses, but necessary steps in filing their applications." *Id.*

Considering the failure of Plaintiff to provide any citation to its claims of harm, the fact that most if not all of the harm cited has already occurred, and the apparent reparability of Plaintiffs economic damages should they ultimately prevail at trial, the Court finds that Plaintiffs fail to meet their burden on this element.

**E.   Balance of Equities/Public Interest**

When considering the balance of equities and the public interest in this matter, the Court finds Defendants' arguments the more persuasive.  Plaintiffs essentially reiterate their case, arguing that Defendants actions were abrupt and unlawful, that "the government cannot claim to suffer any hardship," and that "the government's actions in this case threaten to permanently undermine the regulated community's ability to rely on the Visa Bulletin."  Dkt. #7 at 8-9.  In Response, Defendants argue "[t]he public interest favors applying federal law correctly," that "it is contrary to the public interest and the law to require an executive agency to act in a manner that exceeds its statutory authority," and that "should a temporary restraining order be granted and should the Government then succeed in litigation, it would have to incur the substantial cost and burden returning applications."  Dkt. #13 at 15.  Most persuasively, however, is Defendants' argument that "it is in the public's interest that the agency has the authority to update its guidance when necessary."  *Id.*  Given the claim that the Revised Visa Bulletin corrected a statement contrary to statutory authority, the Court finds that the public interest lies in denying this Motion and that Plaintiffs fail to meet their burden on this element.

ORDER
PAGE - 7

**F. Conclusion**

While the Court appreciates the confusion caused by the two Visa Bulletins published in September and the potentially wasted expenses Plaintiffs incurred as a result, because Plaintiffs fail to meet the critical elements for a temporary restraining order at this time, the Court cannot issue injunctive relief.

Accordingly, the Court hereby finds and ORDERS that Plaintiffs' Motion for Temporary Restraining Order (Dkt. #7) is DENIED.

DATED this 6th day of October, 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8