R. Andrew Free
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 244-4345
Andrew@ImmigrantCivilRights.com

Gregory H. Siskind
SISKIND SUSSER, PC
1028 Oakhaven Road
Memphis, TN 38119
Telephone: (901) 682-6455
Facsimile: (901) 339-9604
GSiskind@visalaw.com

Robert H. Gibbs
Robert Pauw
GIBBS HOUSTON PAUW
1000 Second Avenue, Suite 1600
Seattle, WA 98104-1003
(206) 682-1080

Attorneys for Named Plaintiffs
and the proposed classes

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## SEATTLE, WASHINGTON

| | |
|---|---|
| Chintan MEHTA, ET AL., <br><br> Plaintiffs, <br><br>    v. <br><br> U.S. DEPARTMENT OF STATE, ET AL., <br><br> Defendants. | **Case No. 2:15-cv-01543-RSM** <br><br> **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **NOTE ON CALENDAR**: December 4, 2015 |

## Table of Contents

**I.      INTRODUCTION AND PROPOSED CLASS DEFINITION** ....................................... 3

**II.     FACTUAL BACKGROUND** ........................................................................... 4

**III.    CLASS CERTIFICATION** ............................................................................ 8

    **A.      This Action Satisfies the Class Certification Requirements of Federal Rule of Civil Procedure 23(A)** ........................................................................................ 9

        1.      Numerosity of Proposed Class and Other Factors Make Joinder of the Proposed Class Members Impracticable ............................................................................. 9

        2.      The Proposed Class Presents Common Questions of Law and Fact ......................... 14

        3.      The Claims of the Individual Plaintiffs are Typical of the Claims of the Proposed Class Members. ......................................................................................... 17

        4.      The Individual Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Counsel are Qualified to Litigate this Action. .............................................. 19

    **B.      This Action Satisfies the Requirements of Rule 23(B)(2) of ohe Federal Rules of Civil Procedure** ........................................................................................ 22

**IV.     CONCLUSION** .................................................................................... 23

## I.    INTRODUCTION AND PROPOSED CLASS DEFINITION

The Individual Plaintiffs bring this action to compel Defendants to accept visa applications according to the dates provided in the original October 2015 Visa Bulletin (Original Visa Bulletin) that was issued on September 9, 2015. Defendants unlawfully and unconstitutionally changed six of the date cutoffs for the filing of Adjustment of Status applications (filing date cutoffs) in a Revised October 2015 Visa Bulletin (Revised Visa Bulletin) that was issued on September 25, 2015. All of the changes moved the dates earlier, i.e. the filing dates were retrogressed. These date changes were arbitrary and capricious.

Moreover, the date changes deprived Plaintiffs and other similarly situated individuals of the benefits accorded to foreign nationals who have an Adjustment of Status application pending with U.S. Citizenship and Immigration Services (USCIS). These benefits include eligibility for a portable employment authorization card that would have given the Plaintiffs job flexibility and for advance parole for travel abroad.

Additionally, Plaintiffs and similarly situated individuals reasonably relied on the filing dates in the Original Visa Bulletin and began preparing their Adjustment of Status applications. Many took time off of work, some to the displeasure of their employers, in order to collect the evidence necessary for with their applications. As a result of the date changes, they  missed work time and income and expenses incurred in collecting evidence were wasted. Accordingly, Individual Plaintiffs seek declaratory and injunctive relief requiring Defendants to accept Adjustment of Status applications in accordance with the Original Visa Bulletin.

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Individual Plaintiffs respectfully move this Court to certify the following nationwide class and to appoint all Individual Plaintiffs as class representatives:

Noncitizens who would have been eligible to file an employment-based Adjustment of Status application in October 2015 pursuant to the Filing Date Cutoffs in the Original Visa Bulletin but who are not eligible pursuant the retrogressed dates in the Revised Visa Bulletin.

## II.    FACTUAL BACKGROUND

This action concerns individuals who would have been eligible to file employment-based Adjustment of Status applications with USCIS in October 2015 according to the Original Visa Bulletin, but had that possibility pulled from beneath them with the issuance of the Revised Visa Bulletin. This left them with less money, more difficulty traveling, and inability to change employers. These individuals came together to challenge the legitimacy, legality, and constitutionality of the Revised Visa Bulletin in response to those harms suffered.

Each potential immigrant has a Priority Date based on the date that the immigration petition was received by USCIS (for family-based immigration and for employment-based immigration that does not require labor certification) or the date that the labor certification application was received by the Department of Labor. Because there are statutory limitations on the number of visas that USCIS may issues in a year, both in absolute terms and by category, USCIS has used Cutoff Dates to limit the number of Adjustment of Status applications filed and the number of pending applications. Only individuals with a Priority Date before the Cutoff Date may be issued a visa. USCIS, the Department of Homeland Security (DHS), and the Department of State (DOS) are all involved, to varying degrees, in determining where the Cutoff Date should fall for each preference category

Historically, the Department of State (DOS) issued a single Visa Bulletin each month, upon which applicants rely to plan their careers and their immigration options. The Visa Bulletin, published several weeks prior to the first of the relevant month, advised potential green card beneficiaries which Priority Dates were likely to have a visa available for issuance  within the

forthcoming month. However, after repeated calls for modernization by the White House and the Secretary of Homeland Security, DOS announced that it would add a second set of dates (Filing Dates) to future Visa Bulletins, beginning with the October 2015 Visa Bulletin to be released in September 2015. This second set of dates represents estimates by the State Department  as to which Priority Dates would be eligible to *submit* an application for Adjustment of Status and thereby receive the resulting benefits of having adjustment application pending with USCIS.

In order to submit an Adjustment of Status application (Form I-485), an individual must collect the proper evidence, and obtaining and paying for the translation of a myriad of necessary documents. Many applicants obtained their required medical exam and vaccinations in order to expedite their adjudication. These steps commonly require individuals to take time off of work, hire attorneys, and cancel or adjust work and personal travel plans, to the frustration of employers and family members, particularly where needed in just a few weeks.

In deciding to include the new, second chart of application eligibility Priority Dates in the Visa Bulletin, DOS, the DHS, and USCIS intended for potential Adjustment of Status applicants to rely upon the dates in this chart. The clear purpose of publishing filing cutoff dates is to encourage soon-to-be-eligible applicants to begin preparation of their applications and collection of the necessary documents and evidence, which allows these applications to be submitted promptly and allows DOS, DHS, and USCIS to better balance their cutoff dates and the application queue. Nonetheless, DOS dramatically retrogressed the application eligibility dates included in the Original Visa Bulletin issued on September 9, 2015 by way of the Revised Visa Bulletin issued on September 25, 2015. In the intervening weeks, potential applicants who were to become eligible to apply under the original dates spent substantial money and time completing the various steps necessary to submit an application. The dramatic change to the revised dates

meant that much of the money spent preparing the application and evidence is destined to become a sunk cost. It further meant that often significant changes made by individuals to their immediate lives in reliance on the expected forthcoming benefits of having a pending application had been for no reason at all. And class members are deprived of the substantial benefit for employment-based adjustment applicants of the ability to advance their careers by changing to a same or similar position with a new employer in a new location.

The date changes resulted in tangible and ongoing harm. Plaintiff Chintan Mehta spent over $2,000 to prepare his application and was forced to reject a promotion that carried with it a $25,000 raise. Ex. 17-1, Chintan Mehta Decl. ¶5. This harm is on top of not being able to travel for the last four years, causing him to miss both his brother's and his sister's weddings. Ex. 17-1, Chintan Mehta Decl. ¶XX. Plaintiff Sourav Hazra spent over $2,500 to prepare his application. Ex. 17-2, Sourav Hazra Decl. ¶5. He also had to take off one day of work to focus on preparing the application which resulted in lost wages of $500. Ex. 17-2, Sourav Hazra Decl. ¶5. Additionally, both Plaintiff Mehta and Plaintiff Hazra and their respective wives were planning on trying to conceive their second child, but now they must wait at least three months because of the negative impacts that the immigration-required MMR vaccine can have on fetal development. Ex. 17-2, Chintan Mehta Decl. ¶6; Ex. 17-2, Sourav Hazra Decl. ¶6. The other Individual Plaintiffs have incurred similar estimated reliance costs from the preparation their Adjustment of Status applications and missing work. (*See, e.g.*, Ex. 17-3, Venkata Shiva Ayyagari Decl. ¶5 ($3,200); Ex. 17-4, Qi Wang Decl. ¶5 ($2,200); Ex. 17-5, Quan Yuan Decl. ¶5 (5,100); Exh. 17-6, Ranjit Jain Decl. ¶10 ($5,067); Ex. 17-7, Satyavan Panda Decl. ¶11 ($4,750); Ex. 17-8, Ravi Gusain Decl. ¶5 ($3,130); Ex. 17-9, Akshay Kawale Decl. ¶5 ($375); Ex. 17-10,

Haifeng Xiao Decl. ¶5 ($10,975); Ex. 17-11, Anandhi Srinivasan Decl. ¶5 ($830); Ex. 17-12, Ravi Vishnuvardhan Decl. ¶10 ($6,025); Ex. 17-13, Venkata Surapaneni Decl. ¶5 ($1,300)).

Plaintiffs' injuries have not been limited to out of pocket expenses. Plaintiff Gusain is concerned that he will have to pass up job offers because of this situation. Exh. 17-8, Ravi Gusain Decl. ¶7. Plaintiff Kawale contends that with employment portability he could make up the $30,000 pay gap between what he earns and the expected salary that someone with his credentials could make. Ex. 17-9, Akshay Kawale Decl. ¶6. Other plaintiffs also would have received substantial salary increases had they been permitted to submit their Adjustment of Status applications. *See, e.g.,* Ex. 17-10, Haifeng Xiao Decl. ¶6.

Plaintiffs have suffered substantial personal harms as well. Plaintiff Haifeng Xiao remains unable to visit her sick father who is hospitalized with cancer in china. Ex. 17-10, Haifeng Xiao Decl. ¶6. Had she been permitted to file her Adjustment of Status application, she would have been eligible to apply for Advance Parole to travel and see her father. Plaintiff Vishnuvardhan's brother's wedding was originally scheduled for November 2015, but his family is close, so when Plaintiff Vishnuvardhan was advised not to travel without Advance Parole, his brother postponed the wedding. Ex. 17-12, Ravi Vishnuvardhan Decl. ¶11. These are just some of the harms experienced by the Individuals Plaintiffs.

DOS and DHS and the other Defendants intended for Adjustment of Status applicants to rely on the Visa Bulletin dates and other published information reinforcing those date in order to make the green card process more efficient and effective. The plaintiffs responded by relying on those representations. This intended reliance causes substantial harm.[1]

---

[1] The concepts of reliance and inducement, and the enforceability of certain public representations are well established in contract law. *See, e.g., Lejkowitz v. Great Minneapolis Surplus Store*, 86 N.W.2d 689 (Minn. 1957) (concluding that a department store advertisement was an enforceable offer).

Plaintiffs' Motion for Class Certification – 7
MEHTA v. DEPT. of STATE

This situation is as though the CEO of a cell phone company with a monopoly on cell service published an ad telling potential new subscribers that the company would only be permitting people to sign up for cell service if they each gave him a tailored to fit him. Otherwise they would be stuck with just a landline. So one woman who wanted cell service then went out and got the CEO's measurements, found a good tailor, and then paid $2,000 for the suit. But then the day before she was to deliver it, he told everyone that he had changed his mind. No one new would be allowed to get cell service right now. When the woman complained, he reassured her that if she just held on to this suit for an indefinite period of time, he will likely change his mind in the future and make that trade, though by then, his size may have changed so she may have to tailor him a new suit. For now, she is stuck with the suit and out $2,000.

## III.   CLASS CERTIFICATION

Upon a showing that the requirements of Rule 23(a) and (b)(2) have been met, numerous district courts within the Ninth Circuit have certified classes of noncitizens who challenge immigration policies and practices. *See, e.g., Khoury v. Asher*, 3 F. Supp. 3d 877 (W.D. Wash. 2014) (certifying district-wide class of certain noncitizens subject to mandatory detention); *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) (reversing district court order denying class certification for class of immigration detainees subject to prolonged detention); *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194 (W.D. Wash. 2008) (certifying district-wide class of certain individuals with delayed naturalization cases); *Santillan v. Ashcroft*, No. 04-2686 MHP, 2004 U.S. Dist. LEXIS 20824 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of lawful permanent residents challenging delays in receiving documentation of their status); *A.B.T. v. United States Citizenship & Immigration Servs.*, No. 11-2108, 2013 U.S. Dist. LEXIS 160453 *at* *11(W.D. Wash. Nov. 4, 2013) (W.D. Wash. Nov. 4, 2013) (approving settlement and certifying nationwide class of persons in removal proceedings challenging procedures governing the ability

of asylum applicants to work while their asylum applications are pending). Like these cases, the instant action satisfies the requirements for class certification under Rule 23(a) and (b)(2). Each of these requirements is discussed below.

### A. This Action Satisfies the Class Certification Requirements of Federal Rule of Civil Procedure 23(a)

Rule 23(a) establishes four prerequisites for class certification: numerosity, commonality, typicality, and adequacy.

#### 1. Numerosity of Proposed Class and Other Factors Make Joinder of the Proposed Class Members Impracticable

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). Determining whether plaintiffs meet the numerosity test "requires examination of the specific facts of each case and imposes no absolute limitations." *Troy v. Kehe Food Distributors,* 276 F.R.D. 642, 652 (W.D. Wash. 2011) (citing *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980)).

"Numerousness—the presence of many class members—provides an obvious situation in which joinder may be impracticable, but it is not the only such situation." William B. Rubenstein, et al., *Newberg on Class Actions* § 3:11 (5th ed. 2014). "Thus, Rule 23(a)(1) is an impracticability of joinder rule, not a strict numerosity rule. It is based on considerations of due process, judicial economy, and the ability of claimants to institute suits." *Id.* A Rule 23(a)(1) analysis should consider "not only the class size but other factors as well, including the geographic diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *See, Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D.Cal.1986). Where it is a close question, the

Court should certify the class. *Stewart v. Associates Consumer Discount Co.*, 183 F.R.D. 189, 194 (E.D. Pa. 1998).

### a)   The Class Size Makes Joinder Impracticable.

No fixed number of class members is required to fulfill the numerosity requirement. *Perez-Funez v. District Director, INS*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995). In fact, courts have found impracticability of joinder when relatively few class members are involved. *See, e.g., Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763, 765–66 (9th Cir. 1971) (finding 17 class members sufficient); *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 674–76 (W.D. Wash. 2010) (certifying class with 27 known members). A class with 40 or more members is presumed to satisfy the numerosity requirement. Rubenstein, *Newberg on Class Actions*, § 3.12 at 198.

Additionally, where only declaratory or injunctive relief is sought, the degree of proof for the numerosity requirement is relaxed. *See Sueoka v. U.S.*, 101 F.App'x 649, 653 (9th Cir. 2004) (concluding that the numerosity requirement was fulfilled for a class seeking only injunctive and declaratory relief, relying on a "reasonable inference arising from plaintiff's other evidence that the number of unknown and future members of proposed subclass . . . is sufficient to make joinder impracticable.); *see also Goodnight v. Shalala*, 837 F. Supp. 1564, 1582 (D. Utah 1993). In such cases, the plaintiffs' burden to identify class members is substantially reduced. *See Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) (citing *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 276 (10th Cir. 1977) and *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975)); *Doe v. Charleston Area Medical Ctr.*, 529 F.2d 638, 645 (4th Cir. 1975) ("Where 'the only relief sought for the class is injunctive and declaratory in nature . . .,' even

'speculative and conclusory representations' as to the size of the class suffice as to the requirement of many." (citation omitted)).

Moreover, in certifying classes of noncitizens, courts have taken notice of circumstances in which "INS [now DHS] is uniquely positioned to ascertain class membership." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (requiring Defendants to provide notice to class members). DHS and DOS have control over precise and detailed information that would be help demonstrate the impracticability of joinder in this case, but they do not make such information publicly available. USCIS releases quarterly inventory reports of pending visa applications by Priority Date, nationality, and visa type. DOS releases data on the number of granted visa applications by nationality and visa type, but most of its reports are annual and/or not broken down sufficiently by visa category. With access to even basic monthly visa and labor certification data, a good analyst could quickly estimate the number of Indian EB-2 applicants with Priority Dates between July 1, 2009 and July 1, 2011. But such data has not been made publicly available, which leaves plaintiffs estimating the class size with less precision than the Defendants can. It would be improper to allow these agencies to defeat class certification on numerosity grounds by withholding access to the relevant data.

Despite DOS and USCIS possessing better data than that which is publicly available, they do release some data summaries that permit a reasonable estimation of the proposed class size. Plaintiffs' estimations of the membership in proposed class far exceeds the numerosity requirement. *See Ali v. Ashcroft*, 213 F.R.D. 390, 408 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005) ("[T]he Court does not need to know the exact size of the putative class, 'so long as general knowledge and common sense indicate that it is large.'" (citations omitted)).

One report USCIS regularly releases (every three months) is an inventory sheet of the number of pending employment-based Adjustment of Status applications, broken down into the four primary nations of chargeability—India, China-Mainland, Mexico, and the Philippines—and the rest of the world.[2] Within each of these nations, the inventory further breaks down the pending applications into preference category and Priority Date. Comparing succeeding inventories commonly permits inferences as to what the previously-unpublicized filing date cutoff had been over the previous three months. Reviewing the trends in these inventories allows an estimate of the number of new applications that will be submitted when a Priority Date month is opened up to applications for the first time and when it is opened up subsequent times.

Based on the inventories, for Indian EB-2 applicants, an average of between 1,050 and 1,300 applications will be submitted the first time that a Priority Date month falls earlier than the filing date cutoff. In this case, the Revised Visa Bulletin changed the filing date cutoff for Indian EB-2 applicants from July 2011 in the Original Visa Bulletin to July 2009. Within that range are 14 months of Priority Dates that have never yet been eligible to submit Adjustment of Status applications (May 2010 through June 2011). Combining this information with the average number of applications submitted in such circumstances, under the Original Visa Bulletin dates, as many as 14,700 to 18,200 Indian nationals would have been expected to apply for Adjustment of Status under EB-2 in October 2015. Based on the trends in the inventory sheets and the data released on visas issued, an additional 3,000 Indian nationals would be expected to apply in the EB-2 category from the Priority Dates from July 2009 through April 2010, which had previously

---

[2]       http://www.uscis.gov/green-card/green-card-through-job/previous-pending-employment-based-i-485-inventory/pending-employment-based-i-485-inventory;   *see       also* http://www.uscis.gov/tools/reports-studies/immigration-forms-data/data-set-form-i-485-application-adjustment-status (quarterly summaries of the number of applications received, approved, denied, and pending by USCIS office, but not broken down by preference of chargeability).

been permitted to file Adjustment of Status applications back in early 2012. This brings the total number of individuals harmed by the Visa Bulletin revision to as many as 17,700 to 21,200. Applying the same methods to Chinese EB-2 applicants shows that there are as many as 3,000 Chinese-Mainland nationals who would have applied in October 2015 under the filing date cutoffs in the Original Visa Bulletin but were cut out by the Revised Visa Bulletin.

In total, a reasonable estimate for the number of Indian and Chinese nationals injured by the issuance of the Revised Visa Bulletin is over 20,000, which fulfills the numerosity requirement. Even a class 20 times smaller would clearly fulfill the numerosity requirement.

b) *Other Relevant Factors Also Demonstrate That Joinder Would Be Impracticable.*

In addition to class size, other factors that inform the impracticability of joinder include: "[1] the geographical diversity of class members, [2] the ability of individual claimants to institute separate suits, and [3] whether injunctive or declaratory relief is sought." *McCluskey v. Tr. of Red Dot Corp.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (quoting *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)). Application of these factors underscores the impracticability of joinder in this case.

The attached declarations from plaintiffs and previously submitted declarations leave no doubt about the geographical diversity of the proposed class members. Government reports regarding the locations of new visa beneficiaries also demonstrate that class members are scattered across the country.[3] The national nature of the plaintiff class makes joinder impracticable and militates in favor of class certification.

---

[3] *See, e.g.*, USCIS Adjustment of Status Form I-485 Performance Data (Fiscal Year 2015, 3rd Qtr) http://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/Adjustment%20of%20Status/I485_performancedata_fy2015_qtr3.pdf; DOS Immigrant Visas Issued and Adjustments of Status (FY 2014)

Plaintiffs' Motion for Class Certification – 13
MEHTA v. DEPT. of STATE

Moreover, the proposed class members would have great difficulty pursuing their claims individually due to a variety of factors, including lack of representation, lack of awareness that a cause of action exists, and/or fear of government retaliation. Numerous courts have found that joinder would be impracticable under comparable circumstances. *See, e.g., United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals . . . who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf."); *Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding that "poor, and elderly or disabled" plaintiffs dispersed over a wide geographic area "could not without great hardship bring multiple lawsuits").

The plaintiff class is large, geographically dispersed, and best situated to group action rather than thousands of individual actions. Plaintiffs satisfy the general numerosity requirement of Rule 23(a)(1). Further, as previously noted, where, as here, injunctive or declaratory relief is sought, the requirements of Rule 23(a)(1) are more flexible. *See Sueoka*, 101 F.App'x at 653 Plaintiffs seek only declaratory and injunctive relief. Because Plaintiffs satisfy the stricter numerosity requirement of Rule 23(a)(1), *a fortiori*, they meet the requirements of the rule when liberally construed.

### 2.    The Proposed Class Presents Common Questions of Law and Fact

Rule 23(a) includes both a commonality requirement and typicality requirement. Commonality requires that the proposed class have common questions of law or fact. Rule 23(a)(2). Typicality requires that the named representatives in the class action have claims or defenses typical of those within the class generally. Rule 23(a)(3). This motion addresses these

---

http://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2014AnnualReport/FY14 AnnualReport-TableV.pdf.

requirements in sequence, however the analysis of each is informative of the other. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

To satisfy the commonality requirement, "[a]ll questions of fact and law need not be common." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). To the contrary, one shared legal issue can be sufficient. *See, e.g., , Abdullah v. United States Sec. Assocs., Inc*., 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 53 (2014); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."); *Rodriguez*, 591 F.3d at 1122 ("[T]he commonality requirement [] asks us to look only for some shared legal issue or a common core of facts."). The Ninth Circuit has explained, "'[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'" *Parsons v. Ryan*, 754 F.3d 357, 675 (9th Cir. 2014) (citation omitted).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157). In determining that a common question of law exists, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Thus, "[w]hat matters to class certification is not the raising of common 'questions' . . . but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Here, common questions and answers will drive the resolution of this case for the Individual Plaintiffs and the members of the proposed class. All suffered the same injury. They have all been deprived of the same benefits that accord to all individuals with pending employment-based Adjustment of Status applications, i.e. extended work authorization, travel authorization, ability to change employers, job duties or geographic location. They all were victims of unlawful arbitrary and capricious conduct by the Defendants as governed by the APA. They all suffered the same deprivation of their constitutional due process rights. Though there are differences in the precise out-of-pocket financial harm and personal and professional harms, are all reliance-based harms arising from the same government conduct, the same statutory and constitutional violations, and the same issues. Factual variations in individual cases are insufficient to defeat commonality where the differences will not affect the outcome of the legal questions. *See Califano v. Yamasaki,* 442 U.S. 682, 701 (1979); *Walters*, 145 F.3d at 1046.

This case turns on the existence of a policy and practice, which applies equally to all class members regardless of any factual differences. Courts have affirmed that such legall questions are well-suited to resolution on a class-wide basis. *See, e.g., Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (reversing denial of class certification motion because movants had "identified a single, well-enunciated, uniform policy" that was allegedly responsible for the harms suffered by the class). Moreover, "the court must decide only once whether the application" of Defendants' policies and practices "does or does not violate" the law. *Troy,* 276 F.R.D. *at* 654; *see also LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (holding that the constitutionality of an INS procedure "[p]lainly" created common questions of law and fact). As such, resolution on a classwide basis also facilitates

practical and efficient case management, which is one of the key purposes of the commonality requirement. *Rodriguez,* 591 F.3d at 1122.

The Individual Plaintiffs' claims and those of the proposed class are all susceptible to common answers that will drive this litigation to an appropriate, class-wide resolution. Therefore, the proposed class fulfills the commonality requirement.

### 3. The Claims of the Individual Plaintiffs are Typical of the Claims of the Proposed Class Members.

Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the claims . . . of the class." Meeting this requirement usually follows from the presence of common questions of law. *Falcon*, 457 U.S. *at* 157 n.13. To establish typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156 (internal quotation marks omitted). As with commonality, factual differences among class members do not defeat typicality provided there are legal questions common to all class members. *See LaDuke,* 762 F.2d at 1332 ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class."); *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (recognizing that a class of prisoners subject to discriminatory treatment by defendants would suffer different injuries due to different disabilities, but those "minor" differences were "insufficient to defeat typicality"); *Smith v. University of Wash. Law Sch.,* 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims.").

The claims of the Individual Plaintiffs, all of whom would have been eligible to file for Adjustment of Status in October 2015 under the filing date cutoffs listed in the Original Visa Bulletin, are typical of the of the claims of the proposed class. They present common questions of law regarding the policies and conduct of the Defendants. Each of the Individual Plaintiffs has suffered concrete harms as a result of Defendants' actions. Examples of harms experienced by some plaintiffs include serious personal and professional injury and sunk costs of thousands of dollars in out-of-pocket reliance expenses for legal help, medical visits, and other preparation work that may never be timely or useful. These harms stem from the reliance costs of preparing an application for Adjustment of Status and fulfilling its requirements and from changing personal and professional plans in reliance on shortly receiving the benefits that adhere to an individual with a pending Adjustment of Status application. Such harms are representative of the harms that any typical class member has experienced.

Individual Plaintiffs, like all members of the proposed class, seek declaratory and injunctive relief from this Court directing the Defendants to accept Adjustment of Status applications in accordance with the filing cutoff dates published in the Original Visa Bulletin. As explained with regard to commonality, the same unlawful conduct affected the Individual Plaintiffs as well as the members of the proposed class. The questions of law that arise in and will lead to resolution of the Individual Plaintiffs' claims are typical of the class. Moreover, the Individual Plaintiffs possess the same interests and suffered the same injuries as the members of the proposed class. *Falcon*, 457 U.S. *at* 157. The proposed class, therefore, fulfill the typicality requirement.

**4.      The Individual Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Counsel are Qualified to Litigate this Action.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotation marks omitted). "Whether the class representatives satisfy the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Walters*, 145 F.3d at 1046 (internal quotation marks omitted).

*a)   The Individual Plaintiffs Will Protect the Interests of the Class.*

The Individual Plaintiffs will fairly and adequately protect the interests of all the members of the proposed class because they seek declaratory and injunctive relief on behalf of the class as a whole, share a common interest in ensuring the protection of their constitutional and statutory rights, and have no interests antagonistic to other members of the class. *See, e.g.*, *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 371 (C.D. Cal. 1982). Their mutual goal is to declare Defendants' challenged policies and practices unlawful and unconstitutional and to enjoin their application of the Revised Visa Bulletin.

All the Individual Plaintiffs have spent money to prepare their Adjustment of Status applications and many have sacrificed beneficial opportunities and made potentially harmful and hurtful personal and professional choices in reasonable reliance on the Original Visa Bulletin. The interests of the Individual Plaintiffs and the rest of the class are unified as all of them would benefit from the filing date caps being set as stated in the Original Visa Bulletin. Even those

class members who had not yet spent money to prepare their application nonetheless lost the right to apply in October 2015 and to thereby receive the benefits of have a pending Adjustment of Status application when the Revised Visa Bulletin was issued. In sum, the Individual Plaintiffs' goal of enjoining the application of the Revised Visa Bulletin could benefit every member of the class.

In fact, one would expect that, were each of the plaintiffs in the proposed class to bring an individual suit, the requested relief in each case would likely be the same injunctive and declaratory relief requested here. There is no better relief for these individuals than permission to file Adjustment of Status applications as provided  under the Original Visa Bulletin.

The Individual Plaintiffs are able to represent the interests of the proposed class even if some of their Priority Dates are permitted to file Adjustment of Status applications. Federal litigation can move slowly.  As a result, by the time this motion and this case are decided, further Visa Bulletins likely will have been released and these future Visa Bulletins may move the filing date cutoff to a date later than the Priority Dates of some Individual Plaintiffs. This does not impact the Individual Plaintiffs' ability to fairly and adequately represent the class. *Perez-Funez v. District Director, INS at* 997–78 (C.D. Cal. 1984) (finding that an immigration detainee representative who won immigration relief and thus left the class would continue to be an adequate class representative). The finite nature of some of the injuries to class members makes their claims inherently transitory and protected under the relation back doctrine. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). Under this doctrine, the certification of the class will "relate back" to the original complaint despite the fact that a named plaintiff's individual claim has become moot. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (the "relation back doctrine" is appropriate where "claims are so inherently transitory that the trial court will

not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires"); *Pitts v. Terrible Herbst*, 653 F.3d 1081, 1089 (9th Cir. 2011) ("[T]he termination of a class representative's claim does not moot the class claims.").

Eventually, DOS and USCIS will allow the individuals with Priority Dates of the proposed class to submit Adjustment of Status applications. Given the length of time of federal litigation, it is possible that by the time this case reaches a conclusion, no Individual Plaintiff will remain above the filing date cutoff. *See Sosna v. Iowa*, 419 U.S. 393, 558 (1975).  Yet, the possibility of future arbitrary and capricious retrogressions of filing date cutoffs will remain. As a result, Defendants' unlawful conduct in this case and in future unlawful retrogressions will never be redressed absent classwide relief.

*b)  Class Counsel Are Qualified To Represent the Class.*

The adequacy of Plaintiffs' counsel is also satisfied here. Counsel are deemed qualified when they can establish their experience in previous class actions and cases involving the same area of law. *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985); *Marcus v. Heckler*, 620 F. Supp. 1218, 1223-24 (N.D. Ill. 1985); *Adams v. Califano*, 474 F. Supp. 974, 979 (D. Md. 1979), *aff'd sub nom. Adams v. Harris*, 643 F.2d 995 (4th Cir. 1981).

Plaintiffs are represented by three private law firms that do extensive immigration litigation — Gibbs Houston Pauw, Siskind Susser, P.C., and the Law Office of R. Andrew Free. Counsel are experienced in protecting the interests of noncitizens and, collectively, have extensive experience in handling complex immigration litigation and class action claims. *See, e.g.*, Exhs. 17-14–17-17, Declarations of Robert Gibbs, Robert Pauw, Greg Siskind, and R. Andrew Free. Counsel have served as counsel of record in numerous immigration-related cases,

including cases in which class certification and class relief were granted. *See id.* In sum, Plaintiffs' counsel will vigorously represent both the named and absent class members.

**B.     This Action Satisfies the Requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure**

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet at least one of the requirements of Rule 23(b) for a class action to be certified. This action meets the requirements of Rule 23(b)(2), namely "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Walters*, 145 F.3d at 1047 ("We note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule. . . . It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole."). Courts have found that "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters*, 145 F.3d at 1047.

Defendants' harmful conduct was directed at all members of the proposed class and applied equally to all. Individual Plaintiffs challenge—and seek declaratory and injunctive relief from—actions and policies that have resulted in substantial costs and deprived plaintiffs of the opportunity to submit Adjustment of Status applications and to receive the benefits accorded to individuals with pending adjustment applications. Accordingly, class-wide relief is appropriate under Rule 23(b)(2). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001), *amended on other grounds*, 273 F.3d 1180 (9th Cir. 2001);

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs satisfy the requirements of rules 23(a) and 23(b)(2). Accordingly, Plaintiffs respectfully request that the Court certify this case as a class action as proposed by Plaintiffs, appoint Plaintiffs' counsel as class counsel, and enter an order certifying the proposed class.

Respectfully submitted,

/s/ R. Andrew Free
R. ANDREW FREE, TN BPR No. 30513
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 244-4345
Andrew@ImmigrantCivilRights.com

/s/ Gregory H. Siskind
GREGORY H. SISKIND, TN BPR No. 14487
Siskind Susser, PC
1028 Oakhaven Road
Memphis, TN 38119
Telephone: (901) 682-6455
Facsimile: (901) 339-9604
GSiskind@visalaw.com

/s/ Robert H. Gibbs
/s/ Robert Pauw
ROBERT H. GIBBS, WSBA 5932
ROBERT PAUW, WSBA 13613
Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104-1003
(206) 682-1080

## Certificate of Service

I hereby certify that on this date I served upon the following counsel for the Defendants a true and accurate copy of the foregoing *Motion for Class Certification*, and all attachments thereto, via email, facsimile, and U.S. mail,
postage prepaid:

Glenn M. Girdharry
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
F: (202) 305-7000
glenn.girdharry@usdoj.gov

Sarah Wilson
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Sarah.S.Wilson@usdoj.gov

Kerri Keefe
Civil Chief
United States Attorney's Office
for the Western District of Washington
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271


Dated: <u>November 16, 2015</u>                    <u>        /s Robert Pauw      </u>