1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHINTAN MEHTA, et al.,

                      Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
STATE, et al.,

                    Defendants.

Case No. 15-1543RSM

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

## I.      INTRODUCTION

This matter comes before the Court on Defendants United States Department of State, et al. (collectively, "State Department")'s Motion to Dismiss pursuant to FRCP 12(b)(1) and 12(b)(6), Dkt. #27. The State Department argues *inter alia*, that the Court lacks jurisdiction under the Administrative Procedure Act ("APA") to review Defendants' revision to a visa bulletin as this revision does not constitute "final agency action." *Id.* at 2. Plaintiffs oppose this Motion and argue that the bulletin revision does constitute final agency action. *See* Dkt. #30. For the reasons set forth below, the Court agrees with Defendants and GRANTS their Motion.

## II.     BACKGROUND[1]

Plaintiffs and potential class members are "the beneficiaries of approved employment-based visa petitions for highly skilled workers."  Dkt. #22-1 at 2.  On September 9, 2015, the State Department published a monthly "Visa Bulletin" with "a date on which applicants may submit adjustment of status applications… that comes before the projected date on which final adjudicative action will occur."  *Id.* at 3.  Plaintiffs allege that they then spent significant time and money assembling adjustment applications "based on their reasonable expectation—created by over five decades of uniform practice—that the government would abide by the Visa Bulletin it published on September 9, 2015."  *Id.*  On September 25, 2015, the State Department published another, revised Visa Bulletin withdrawing and changing the date on which applicants may submit adjustment of status applications.  *Id.*  Plaintiffs brought this lawsuit on September 28, 2015, and amended their Complaint on September 30, 2015, and January 15, 2016.  Dkt. ##1; 6; 22-1.

## III.     DISCUSSION

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014).  When a party raises a facial attack, the court resolves the motion as it would under Rule 12(b)(6), accepting all reasonable inferences in the plaintiff's favor and determining whether the allegations are sufficient as a legal matter to invoke the

---

[1] The following background facts are taken from Plaintiffs' Second Amended Complaint, Dkt. #22-1, and accepted as true for purposes of ruling on this Motion to Dismiss.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 2

court's jurisdiction.  *Id.* at 1122.  In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed. *Id.* at 570.

**B.  Immigration System at Issue[2]**

*Basic Framework*

Plaintiffs contend they were denied access to immigrant visas that allow noncitizens to be admitted as Lawful Permanent Residents ("LPRs") through an adjustment of immigration status.  These immigrant visas have several advantages over non-immigrant visas, *e.g.* allowing LPRs to live in the U.S. longer, work, and travel internationally with fewer restrictions.  *See generally* 8 U.S.C. §§ 1101(a)(16), 1101(a)(20), 1255.  Obtaining LPR status may be a significant step toward U.S. citizenship.  *See* 8 U.S.C. § 1427(a).

---

[2] The following section contains statements of law and facts.  To the extent that any statement may be factual in nature, it is taken from Plaintiffs' Second Amended Complaint, Dkt. #22-1, and accepted as true for purposes of ruling on this Motion to Dismiss.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

This case specifically concerns employment-based immigrant visas. A noncitizen who wants to obtain such a visa must normally go through an employer, who submits various forms to different branches of the U.S. Government. First, the employer generally must file an application for a labor certification with the Department of Labor ("DOL"). *See* 8 U.S.C. § 1182(a)(5)(A). The DOL is asked to certify that: (1) there are insufficient U.S. workers able, willing, qualified, and available for the particular job; and (2) employment of the individual will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. § 1182(a)(5)(A)(i). The approved labor certification establishes, among other things, the wage that the employer must pay the worker. *See* 8 U.S.C. § 1182(p); 20 C.F.R. § 656.40. The date DOL accepts the application serves as the employee's "priority date," which functions as the employee's place in line for an immigrant visa number. 8 C.F.R. § 204.5(d).

The employer then files an I-140 visa petition with the U.S. Citizenship and Immigration Service ("USCIS"). 8 U.S.C. § 1154(a)(1)(F). In the Form I-140 petition, the employer requests that the employee be classified under one of the employment-based immigrant visa preference categories based on the employee's skills, experience, and/or education. 8 U.S.C. § 1153(b). Once USCIS approves a visa petition, those living in the United States under a current visa status may gain LPR status only if an immigrant visa is "immediately available." 8 U.S.C. § 1255.

The Immigration and Nationality Act ("INA") defines employment-based immigrant visa classifications and sets forth numerical limitations, both worldwide and per country. 8 U.S.C. §§ 1151, 1153(b), 1154(b). The INA generally caps the annual number of employment-based immigrant visas at 140,000, of which 40,040 generally are available to individuals applying under the employment-based second preference (EB-2) classification. 8 U.S.C. §§

1151(d), 1153(b).  The INA further limits the number of employment-based immigrant visa numbers that generally may go to nationals of any one country during a fiscal year to 7% (known as the "per-country limitation").  8 U.S.C. § 1152(a)(2).  The State Department is responsible for administering the provisions of the INA relating to numerical limitations on immigrant visa issuances, including managing the individual allotment of employment-based immigrant visas.  8 U.S.C. § 1153(g).  The State Department allocates visa numbers for use in connection with the issuance of immigrant visas based on reports from consular officers and reports about applications for adjustment of status reported provided by officers of DHS.  22 C.F.R. § 42.51.  When demand for immigrant visa numbers outpaces the statutorily allotted supply in a particular preference category or country, the State Department considers the category or country "oversubscribed" and imposes a cut-off date to keep the allocation of visas within the statutory limits for each fiscal year.  Those who applied after the cut-off date go into a visa queue.  The State Department divides applicants in the visa queue by preference category and, if the applicant's native country has exceeded the INA's per-country cap, foreign state chargeability.  Once preference category and chargeability are accounted for, the State Department determines an applicant's position in the visa queue by referring to his or her priority date, which is the date on which USCIS received the petition (I-130, I-140, I-360, I-526 or, in some cases, foreign labor certification) to accord the applicant immigrant status.  8 C.F.R. § 245.1(g)(2).

*Visa Bulletins*

The State Department's Bureau of Consular Affairs reports the availability of immigrant visas using a monthly Visa Bulletin, which is developed by the Immigrant Visa Control and Reporting Division.  The Visa Bulletin indicates when statutorily limited visas are available to prospective immigrants based on their individual priority date, preference category,

and chargeability country.  The Visa Bulletin allows applicants to check their place in the various family based and employment-based immigrant visa queues by providing the most recent date when a visa number is available for each category.  An immigrant visa becomes available to a noncitizen applicant when his or her priority date is earlier than the cut-off date shown in the Visa Bulletin for his or her preference category and country of chargeability, or when the Visa Bulletin shows the numbers for visa applicants in the non-citizen's preference category are "current."  8 C.F.R. § 245.1(g)(1).  The State Department issues each monthly Visa Bulletin roughly three weeks before it is to go into effect, *e.g.* the "October Visa Bulletin" is issued in mid-September.  This provides applicants additional time to complete and submit their applications before the end of the month deadline (in this example, the end of October) for filing based on a particular month's bulletin.

*Adjustment of Status*

Once an Immigrant Visa becomes available, the noncitizen may apply for adjustment of status.  8 U.S.C. § 1255(a)(3).  USCIS uses the Visa Bulletin to determine whether it will accept Form I-485, Application to Register Permanent Residence or Adjust Status for filing, and to determine when it can make a final adjudication on the application. A visa must be available both at the time the applicant files Form I-485 and at the time USCIS approves the application.  8 C.F.R. § 245.1(g); *see also* 8 C.F.R. § 245.2(a)(2)(i)(A)-(C).

*Visa Bulletin Published on September 9, 2015*

In July 2015, after significant inter-agency coordination and consultation and a Request for Information published in the Federal Register which elicited approximately 1,650 responses, *see* 79 Fed. Reg. 78458 (Dec. 30, 2014), the White House announced that it would revise the monthly Visa Bulletin to better estimate immigrant visa availability for prospective

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 6

applicants, and to provide needed predictability to nonimmigrant workers seeking permanent residency.

On September 9, 2015, the State Department published its October 2015 Visa Bulletin. *See* Dkt. #22-3 at 2-10.  In addition to providing charts reflecting the normal cut-off priority dates in each visa preference and chargeability category, which it now terms "Application Final Action Dates" ("FADs"), the modernized October 2015 Visa Bulletin included a second chart with a new set of dates, called "Dates for Filing Applications," ("filing dates") establishing which adjustment applications may be filed in the relevant month.  *Id.*  The bulletin issued on September 9, 2015, indicated that USCIS would accept adjustment of status applications for employment-based visas filed pursuant to the filing date, rather than the final action date.  *Id.* at 6.  The Visa Bulletin also stated "[i]f it becomes necessary during the monthly allocation process to retrogress a cutoff date, supplemental requests for numbers will be honored only if the priority date falls within the new cut-off date announced in this bulletin. If at any time an annual limit were reached, it would be necessary to immediately make the preference category 'unavailable', and no further requests for numbers would be honored."  *Id.* at 2.

Also on September 9, 2015, USCIS published the dates for filing applications listed in this Visa Bulletin on its website at the address listed in this Visa Bulletin, Dkt. #22-4, and issued a press release addressing the changes, Dkt. #22-6.  USCIS also created and posted to its website an infographic describing a four-step process immigrant visa applicants should use to understand the adjustment of status process.  Dkt. #22-5.  Under Step 4, USCIS instructs potential applicants to "Check the [State Department] Visa Bulletin", because "[i]t will explain" which chart to use to determine when applicants can file for adjustment of status.  *Id.*

According to Plaintiffs' Second Amended Complaint: "in reliance on the government's modernized Visa Bulletin, thousands of highly skilled Chinese and Indian employment-based

immigrant visa applicants began the timely, costly, and disruptive process of gathering documentation, obtaining medical certificates, and filling out applications." Dkt. #22-1 at 25.

*Revised Visa Bulletin Published on September 25, 2015*

On September 25, 2015, the State Department issued a Revised Visa Bulletin for the month of October. Dkt. #22-7. The Revised Visa Bulletin stated:

> This bulletin supersedes the bulletin for October 2015 that was originally published on September 9, 2015, and contained Dates for Filing Applications long used by the Department of State for internal processing purposes. Following consultations with the Department of Homeland Security (DHS), the Dates for Filing Applications for some categories in the Family-Sponsored and Employment-Based preferences have been adjusted to better reflect a timeframe justifying immediate action in the application process…. Please be advised that DHS will rely on this revised bulletin, rather than the bulletin published on September 9, 2015, when considering whether an individual is eligible to file an application for adjustment of status.

*Id* at 2. The Revised Bulletin altered the filing dates for six categories of immigrants, including EB-2 applicants from both China and India, reducing the number of applicants who were eligible to apply starting October 1, 2015. *Id.* at 6. Specifically, the revision eliminated Chinese EB-2 applicants with priority dates between the original Bulletin's cut-off of May 1, 2014, and the revised cut-off of January 1, 2013, and eliminated Indian EB-2 applicants with priority dates between the original Bulletin's cut-off of July 1, 2011, and the revised cut-off of July 1, 2009. *See* Dkt. ## 22-3; 22-7.

Plaintiffs' Second Amended Complaint argues that a State Department Visa Bulletin, from the moment it is published until the first day of the following month, creates a "Preparation Period" window with legal and practical consequences that "shap[e] the conduct and expectations of regulated parties and agencies." Dkt. #22-1 at 18. Plaintiffs argue that "[b]ecause the Visa Bulletin has never been permanently revised after issuance in a way that

adversely affected applicants' ability to rely on it for guidance on when they can file their adjustment applicants, the practical effect of publishing the Visa Bulletin and triggering the Preparation Period is to immediately induce immigrant visa applicants, their attorneys, and government agencies to take affirmative preparatory steps in reliance on the Bulletin." *Id.*

**C. Whether the Visa Bulletin Constitutes Final Agency Action**

Under the APA, agency action is subject to judicial review only when it is made reviewable by statute or is a "final" action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010). The APA does not permit review where "statutes preclude judicial review" and "where the agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1),(2). An agency action is considered final if two elements are met. First, the action must "mark the consummation of the agency's decisionmaking process…. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "The imposition of an obligation or the fixing of a legal relationship is the indicium of finality in the administrative process." *Cabaccang*, 627 F.3d at 1316; *Mount Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1990). "Indicia of finality include: the administrative action challenged should be a definitive statement of an agency's position; the action should have a direct and immediate effect on the day-to-day business of the complaining parties; the action should have the status of law; immediate compliance with the terms should be expected; and the question should be a legal one." *Mt. Adams Veneer Co.*, 896 F.2d at 343 (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-40 (1980)). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect

1    the parties." *Oregon Nat. Desert Ass'n v. United States Forest Serv.*, 465 F.3d 977, 982 (9th

2    Cir. 2006).

3         Defendants argue that the publication of a filing chart such as those contained in the

4    September 9 and 25, 2015, Visa Bulletins does not constitute a final agency action.  Defendants

5    point out that these two Visa Bulletins indicated that applicants may use the Filing Chart "when

6    USCIS determines that there are more immigrant visas available for the fiscal year than there

7    are known applicants for such visas and that "USCIS has determined that this chart <u>may</u> be

8    used (in lieu of the [Application Final Action Dates] chart in paragraph 4.A.) this month for

9    filing applications for adjustment of status with USCIS."  Dkt. #27 (citing Dkt. ## 22-3; 22-7)

10   (emphasis in original).  Defendants first argue that filing charts do not reflect an "unalterable"

11   decision because they are subject to change at any time to ensure that the agencies remain in

12   compliance with statutory limits.  *Id.* at 9 (citing *Nat'l Treasury Employees Union v. Fed.*

13   *Labor Relations Authority*, 712 F.2d 669, 675 (D.C. Cir. 1983)).  Defendants point out that the

14   September 9, 2015, Visa Bulletin stated that the cut off dates in the filing chart could be

15   "retrogress[ed]" and that if numbers of applicants from a foreign state reached a certain point,

16   "it would be necessary to immediately make the preference category 'unavailable.'  *Id.* (citing

17   Dkt. #22-3 at 2).  Defendants argue that these statements support a finding that the filing chart

18   "does not mark an unalterable decision."  *Id.*

19        Next, Defendants argue that no "legal consequences" flow from the publication of the

20   filing charts because:

21              Even after the chart's effective date, USCIS retains discretion to
                adjudicate both the petition and any request for ancillary benefits.
22              The charts, therefore, do not have "the status of law" and do not
                themselves confer any right upon an individual to have an
23              adjustment of status application accepted for filing. Rather, it is
                USCIS's acceptance of a particular adjustment of status application

that determines Plaintiffs' eligibility to apply for the ancillary benefits sought here…

*Id.*

In Response, Plaintiffs argue that once a Visa Bulletin is issued, the state department and USCIS "take no further action to put it into effect." Dkt. #30 at 12. Although Plaintiffs admit that newly eligible applicants cannot apply "until the first of the month"—notably, this date occurred after the State Department issued its revised Visa Bulletin—Plaintiffs argue that the original Visa Bulletin had "extremely important consequences with respect to the issue of good faith reliance for future act." *Id.* citing (*Gen. Elec.*, 290 F.3d at 383). Plaintiffs point to several cases where courts have relied on Visa Bulletins as a legally binding statement of visa availability which governs the legal rights of applicants. *Id.* (citing *De Osorio v. Mayorkas*, 656 F.3d 954, 957 (9th Cir. 2011); *In re Zamora-Molina*, 25 I. & N. Dec. 606, 609 (B.I.A. 2011); *Bolvito v. Mukasey*, 527 F.3d 428, 431–32 (5th Cir. 2008)). Plaintiffs point to a USCIS field manual and agency rules that rely on the Visa Bulletin. *Id*. at 12-13. Plaintiffs argue that, "[a]n agency action may be a final action under the APA despite the fact that the agency could change its position later." *Id*. at 13 (citing, *inter alia*, *Am. Petroleum Inst. v. Envtl. Prot. Agency*, 906 F.2d 729, 739-40 (D.C. Cir. 1990) ("[T]he possibility of future agency action is not sufficient to foreclose review of a definitive action. Otherwise, 'review could be deferred indefinitely.'")). In response to Defendant's argument that no legal consequence flows from the publication of the Visa Bulletin because USCIS makes final determinations with regard to specific applicants, Plaintiffs argue that "pursuant to its own regulations, USCIS has no authority to determine immediate availability and must follow [the State Department's] determinations," and that "Defendants approach finality in a rigid sense inconsistent with the broad and flexible approach required." *Id.* at 14 (citing 8 C.F.R. §42.51).

On Reply, Defendants argue that:

> Plaintiffs do not address the unique features of the Filing Charts and the new two-chart system and, instead, cite to cases pre-dating the current system. Plaintiffs also cite cases from unrelated areas of agency practice to suggest that an action may be final even if it may later be revisited. *See* ECF No. 30 at 13. These cases present a readily-distinguishable situation where the agency has made a definitive determination that could at a future time be revisited. Here, the Filing Charts are not definitive determinations because they are necessarily subject (sic) ongoing revision based on fluctuating demand for visa numbers.

Dkt. #31 at 4.

The Court finds that Defendants are making a facial attack of jurisdiction with this argument.  Taking all the facts in the Second Amended Complaint as true and making all reasonable inferences in favor of Plaintiffs, the Court finds that the agency actions in question, the publishing of the September 9 and 25, 2015, Visa Bulletins and the dates contained therein, do not constitute final agency action as a matter of law for two reasons.

First, the facts contained in the Second Amended Complaint and its attachments do not show that these actions mark the consummation of the State Department's decision-making process as required under *Bennett, supra*.  Rather, both of the Visa Bulletins intrinsically indicate that USCIS "may" use the dates contained in the charts, and that dates might be "retrogressed" or categories of applications made "unavailable" without notice.  The Visa Bulletins are informative rather than declarative in tone.  Second, Defendants have convinced the Court that "rights or obligations" are not determined by these Visa Bulletins, and that no "legal consequences" flow from their issuance unless and until the month in question occurs— *e.g.*, October 1 for the October Bulletin.[3]  Because Defendants successfully revised the October

---

[3] The cases cited by Plaintiffs for the proposition that a Visa Bulletin governs the legal rights of applicants are distinguishable.  Plaintiff is unable to cite to a case directly on point.  *De Osorio* states only that in order to obtain the visa and become an LPR, an applicant "must act within one year of notification of visa availability to… apply for an adjustment of status (if present in the United States)."  656 F.3d at 957.  *De Osorio* does not state that

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 12

Visa Bulletin before October, Plaintiffs did not have a right to submit their applications, and Defendants had no obligation to accept them.  Plaintiffs had yet to obtain a "right;" Defendants had yet to have an "obligation."  Reviewing the indicia of finality from *Mt. Adams Veneer Co.,* 896 F.2d at 343, the Court notes that: the two Visa Bulletins are not "definitive statements" but informative statements; the September 9, 2015, Visa Bulletin did appear to have a direct and immediate effect on the day-to-day business of Plaintiffs; the Visa Bulletins did not have the status of law, if at all, until October 1, 2015; immediate compliance with the terms of these Visa Bulletins was clearly not expected; and the Visa Bulletins did not necessarily answer a legal question.  These indicia of finality support the Court's conclusion that the two Visa Bulletins in question do not constitute final agency action.

Because these agency actions do not constitute final agency action, the Court lacks jurisdiction over Plaintiffs' claims and need not address Defendants' other jurisdictional or 12(b)(6) arguments.  However, the Court notes that Plaintiffs have conceded that monetary relief is not permissible for their claims, and that it appears Plaintiffs' only remaining substantive request for relief is "reinstatement of the Original Visa Bulletin."  Dkt. #30 at 28; *see* Dkt. #22-1 at 45-46.  Plaintiffs' Second Amended Complaint explicitly states causes of action under 5 U.S.C. § 706(2), which gives courts the authority to set aside unlawful agency actions and remand the matter to the agency for further consideration.  *See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657-58 (2007).  Plaintiffs do not cite to 5 U.S.C. §706(1), which allows a reviewing court to "compel agency action unlawfully

---

notification of visa availability guarantees applicants a year to submit an application.  *In re Zamora-Molina, supra* cites to a Visa Bulletin to determine whether or not a visa was available to the respondent, and *Bolvito, supra,* cites to 8 C.F.R. § 245.1(g) for the proposition that a visa bulletin will be consulted to determine whether or not a visa is immediately available.  These cases indicate that a Visa Bulletin can provide necessary information, but do not hold that Visa Bulletins themselves create rights or obligations.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 13

1    withheld or unreasonably delayed." Even if this Court did not lack jurisdiction over Plaintiffs'

2    claims, this would appear to be grounds to dismiss Plaintiffs' claims under Rule 12(b)(6).

3    **D. Leave to Amend**

4        Where a complaint is dismissed for failure to state a claim, "leave to amend should be

5    granted unless the court determines that the allegation of other facts consistent with the

6    challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-

7    *Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court finds that the parties have

8    thoroughly presented the relevant facts of this case, that the parties' dispute is a purely legal

9    one, and that there are no other facts consistent with the challenged pleading which could cure

10   the deficiencies listed above. For that reason, these claims will be dismissed with prejudice.

## IV.    CONCLUSION

        Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,
and the remainder of the record, the Court hereby finds and ORDERS:

        1)  Defendants' Motion to Dismiss (Dkt. #27) is GRANTED.

        2)  Plaintiffs' claims are dismissed with prejudice.

        3)  This case is CLOSED.

        DATED this 16 day of May 2016.


                                        RICARDO S. MARTINEZ
                                        CHIEF UNITED STATES DISTRICT JUDGE